ELIZA R. HAYDOCK, appellant.

*v.*

EDEN HAYDOCK'S exrs., respondents.

1. When a person whose mind is enfeebled by disease or old age, is so placed as to be subjected to the influence of another person, and makes a voluntary disposition of property by gift in favor of such person, the court requires proof of the fact that the donor understood the nature of the act, and that the act was not done through the influence of the donee.

2. Where it is obvious that a gift made by such person is intended to operate as a will, it presents an additional reason for imposing upon the donee the burden of showing convincingly the validity of the act.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Haydock* v. *Haydock, 6 Stew. Eq. 494.*

*Mr. J. R. English* and *Mr. B. A. Vail,* for the appellant.

A gift *inter vivos* is good in equity, unless prejudicial to creditors, or the donor was under legal incapacity or circumvented by fraud. *3 Wait's Actions and Defences 493; Betts* v. *Francis, 1 Vr. 155.*

There is no claim of prejudice to creditors. In the absence

of such, the gift is not only *prima facie* good, but is favored in equity. It was by a husband to his wife. *Mews* v. *Mews, 15 Beav. 529; Deming* v. *Williams, 26 Conn. 226; Jennings* v. *Davis, 31 Conn. 138; Shuttleworth* v. *Winter, 55 N. Y. 624; Draper* v. *Jackson, 16 Mass. 480; Dilts* v. *Stevenson, 2 C. E. Gr. 413.*

*Black* v. *Black, 3 Stew. Eq. 215–219,* holds a gift from a wife to husband good. The same reasons will make good one from the husband to the wife.

The legal requisites of transfer by wife to husband were observed. *Dilts* v. *Stevenson, 2 C. E. Gr. 413.*

It is claimed by appellees that the evidence shows loss of memory. Our courts have decided this to be insufficient. *Stackhouse* v. *Horton, 2 McCart. 202; In re Vanderveer's Will, 5 C. E. Gr. 561.*

They add old age. The decisions are that proof of both is not sufficient. *Turner* v. *Cheeseman, 2 McCart. 243; Whitenack* v. *Stryker, 1 Gr. Ch. 8.*

They further urge that he was prejudiced against his daughter. This would be no cause for setting aside his will, even if the prejudice amounted to monomania. *Trumbull* v. *Gibbons, 2 Zab. 117; Stackhouse* v. *Horton, supra.*

Further, that the gift was unjust. This is insufficient to set aside a will. *Boylan* ads. *Meeker, 4 Dutch. 274; Wintermute's Will, 1 Stew. Eq. 437.*

The existence of undue influence is never presumed, but must be a conclusion. *In re Humphrey's Will, 11 C. E. Gr. 513–521; Moore* v. *Blauvelt, 2 McCart. 367.*

If the transfer was made in lieu of provision by will, and is looked upon as having no more weight than a will, fraud should not be presumed because possible or even probable. *In re Vanderveer's Will, 5 C. E. Gr. 463.*

Undue influence is never presumed. *Baldwin* v. *Parker, 99 Mass. 79; Small* v. *Small, 4 Greenl. 224; Boyse* v. *Cossborough, 6 H. L. Cas. 2; Tyler* v. *Gardner, 35 N. Y. 559.*

*Mr. Garret Berry* and *Mr. J. Henry Stone*, for respondents.

I. To constitute a valid gift *inter vivos*, the donor, at the time of the gift, must possess a mind of sufficient strength—

(*a*) To understand the nature of his property and of his obligations to his family.

(*b*) To permit him to interfere with any former disposition by will with judgment and discretion.

(*c*) To act with reason according to a fixed judgment and a settled purpose of his own.

(*d*) To possess the power if he has the will to do or not do any given act. *Harrison* v. *Rowan, 3 Wash. C. C. 385; Den* v. *Johnson, 2 South. 454; Marsh* v. *Tyrrell, 2 Hagg. 122; Harewood* v. *Baker, 3 Moo. P. C. 282; Stultz* v. *Schaeffle, 18 Eng. L. and Eq. 576; Boyd* v. *Ely, 8 Watts 71; Shropshire* v. *Reno, 5 J. J. Marsh. 91.*

II. The influence of a donee over the donor, especially where there is a confidential relationship between the parties, is undue unless the gift is voluntary, unadvised, unassisted and righteous. *Huguenon* v. *Baseley, 14 Ves. 299; Todd* v. *Grove, 33 Md. 188; Rhodes* v. *Bate, L. R. (1 Ch. App.) 256; Billage* v. *Souther, 9 Hare, 540; 15 Beav.; Gibson* v. *Russell, 2 You. & Coll. 115; In re Greenfield's Est., 14 Pa. St. 505; Sears* v. *Shafer, 6 N. Y. 268; Pashe* v. *Ollat, 2 Phillim. 323; Swinburne on Wills 9; Redfield's Am. Cas. 466, 468; 2 Beav. 128, 141; Blackford* v. *Christian, 1 Knapp 73; 1 Story's Eq. Jur. § 250; Gartside* v. *Isherwood, 1 Bro. C. C. 560.*

The opinion of the court was delivered by

REED, J.

This bill is filed to set aside certain gifts made by Eden Haydock to his wife. Eden Haydock died April 25th, 1879. The first gift was made February 24th, 1879, of nine shares of the stock of the United New Jersey Railroad and Canal Companies and seven bonds of the city of Rahway. The second gift was made March 10th, 1879, of a promissory note for $5,000. Mr. Haydock had made a will eight years before, providing for his wife, which will was, at the time of his death, unrevoked.

The evidence in the case has impressed me with the conviction that at the time when these transfers were made, the mind of the donor approached so closely to the line which defines the limit of legal mental ·capacity, that upon the ground of a want of such capacity I should incline to hold that these gifts were void.

The numerous instances of forgetfulness proven by the officers of the bank of which he was a director, and by artisans and business men with whom he had dealt, displays a mind upon which the business occurrences with which he was concerned left but a feeble impression.

It is, of course, entirely true that the memory may be quite imperfect and yet not make a state of mind which would avoid a disposition of property by gift or by testament. *Turner* v. *Cheesman, 2 McCart. 243; Stackhouse* v. *Horton, 2 McCart. 202 ; In re Vanderveer's Will, 4 C. E. Gr. 561.* Nevertheless, a considerable degree of business recollection is an obvious prerequisite to such a disposition. An apprehension of the present *status* of a man's business affairs is absolutely essential as a base for an intelligent shifting of their position. This involves, of course, the power to recall what has already been done. A person who is oblivious of a former disposition of his property is as unfit to make a subsequent disposition thereof as if he was under an insane delusion as to its extent and character. Now, by the testimony of numerous witnesses, it appears that the mind of Mr. Haydock was so disorganized that the remembrance that he had done any of the recurring business acts which he had been accustomed to transact faded from his mind almost as soon as they were done, and he would, within a short period of time, offer to do the same act again and again. In the face of this evidence it would be difficult to conclude that, at the time when he made these gifts, he had such a recollection of the *status* of his property, particularly of the disposition which he had already made by the will of 1871, as to permit him to make a legal divestiture of any of it by gift. If the case stood upon this ground alone, I should incline to the opinion that a sufficient degree of capacity did not exist.

But if we admit that the donor was a person who possessed sufficient mental power to make a gift, yet I think it is upon the recipients of those gifts to show the fairness of the transaction. Here was a man of weak mind and feeble body. All the evidence in the cause shows that the wife was the one upon whom he naturally leaned. She watched his movements and cared for his wants, and he submitted himself to her control. She naturally and necessarily became the head of the house. While they so lived together, and while none but the wife and her brothers were about him, without the advice of disinterested counselors, the old man made these gifts of which she was the recipient.

I take the rule to be settled that where a person enfeebled in mind by disease or old age, is so placed as to be likely to be subjected to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee. *Huguenin* v. *Baseley, 2 L. C. in Eq. (4th Am. ed.) notes, pp. 1183–1185, American notes pp. 1192–1194.*

The presumption against the validity of the gift is not limited to those instances where the relation of parent and child, guardian and ward or husband and wife, exists but in every instance where the relation between donor and donee is one in which the latter has acquired a dominant position. The parent, by age, may come under the sway of his children. *Highberger* v. *Stiffler, 21 Md. 338.* And so, as in the present case, the husband may become the dependent of the wife, and their natural position become reversed.

The ecclesiastical courts have declared a rule of evidence in regard to wills executed by persons of weak mental condition. The presumption is that a person who executes a will knows the nature of its contents. Proof of its execution, therefore, is all that is required of the proponent. But, if it appears that the testator was of a weak mind, and a bequest is made to a person who stood in a position which would have enabled the beneficiary to influence the act, the burden is shifted and a more rigid

rule is enforced, and probate will not be granted unless the court be satisfied, by additional evidence, that the paper presented does really express the true will of the testator.  *Taylor on Ev.* § *160.*

The presumption of undue influence, however, does not also arise from the same state of facts, in the case of a gift, because the rule in regard to what constitutes undue influence differs when applied to wills and when applied to gifts.  *Boyse* v. *Ross-borough, 6 H. L. Cas. 149 ; Parfitt* v. *Lawless, L. R. (2 P. & D.) 462.*

The influence which is undue in cases of gifts *inter vivos*, is very different from that which is required to set aside a will. In testamentary cases, undue influence is always defined ascoercion or fraud, but, *inter vivos*, no such definition is applied.  Where parties hold positions in which one is more or less dependent 'upon the other, courts of equity hold that the weaker party must be protected, and they set aside his gifts if he had not proper advice independently of the other.  *Huguenin* v. *Baseley supra, notes p. 1271.*

In the present case, these gifts, while gifts *inter vivos*, were undoubtedly intended by the donee to operate as a testamentary disposition of'the donor's property.  It is clear that the physical condition of the donor was critical, and his days brief in number. The presence of Mr. Anderson and the talk with him about drawing a will, and also the conversation detailed by Bayright, which he says he had with Mr. Haydock in the garden, point to the conclusion that it was supposed that the life of the donor would be brief, and that some disposition of his property, in view of his death, was requisite.  For some reason, the will was never drawn, and it is transparent that the gifts were executed to fill the place of a will.

Now it seems to me, that, where it is apparent that a gift is made to accomplish the purpose of a will, to operate as such an instrument, without being surrounded by the formal guards which the statute has provided for the execution of a will, it raises an additional reason why a gift like this should be scanned with circumspection, and why the donee should clearly and convincingly show the validity of its execution.

I entirely concur with the vice-chancellor that, instead of this being shown, it appears that the donor was surrounded with dominant influences which favored the donations, and the presumption that they actually fostered the act is supported by all the testimony in the case bearing upon their conduct toward the donor.

The decree should be affirmed, with costs.

MAGIE, J.

I vote to affirm the decree below, but prefer to put my vote solely on the ground of the incapacity of Mr. Haydock to make the gifts in question in this cause. I think there is, in the evidence, ample proof that deceased did not possess that degree of mental capacity which, even under the lenient rules on the subject, adopted in this state, will justify us in establishing such a disposition of his property. In the opinion of the vice-chancellor, the case presents on this point an "almost insoluble difficulty." It certainly is not free from difficulty. But a careful examination of the evidence convinces me that there is quite sufficient proof to justify the conclusion above stated.

If compelled to decide this case upon the question of undue influence, I should have great difficulty. The careful and deliberate judgment of the vice-chancellor, pronounced after an opportunity to see and hear the witnesses, has, and ought to have, great weight. It ought not to be reversed, unless clearly wrong. It is undoubtedly proved that Mr. Haydock was in a condition susceptible to influence. There are circumstances justifying serious suspicion that some influence was exerted on him. But it seems to me very questionable whether there is anything in the evidence justifying the inference that the influence was undue. I should, therefore, find difficulty in concluding that there is sufficient proof to justify this court in setting aside these gifts if Mr. Haydock had capacity to make them. But the decree is right, on the ground first mentioned, and I therefore vote to affirm.

PARKER, J., (dissenting).

The bill in this cause was filed by the executors of Eden

Haydock *v.* Haydock.

Haydock, deceased, to declare void alleged gifts, made several weeks before his death, to his wife, and to compel the surrender of the securities claimed to have been given her, to the executors, for the benefit of the estate.

The estate is solvent, and the rights of creditors are not involved in the controversy.

Proof of the transfer and delivery of the securities to Mrs. Haydock was made, and it is not denied that the gifts were perfect, if the donor, at the time, was of sound mind, and not controlled by undue influence.

To show mental incapacity, or undue influence, the burthen of proof was on the complainants. I agree with the vice-chancellor, that the proof is not sufficient to justify a decree declaring the gifts void, on the ground of mental incapacity. The evidence does not satisfy me that there was any improper influence employed to induce the gifts. After the death of his son, it was natural that Mr. Haydock should give something more than the will provided to the mother of that son. The treatment of Mr. Haydock by the daughter and her husband, of which he complained bitterly, was such as to induce the gifts. Under the circumstances, the disposition of his property, by Mr. Haydock, was not unnatural nor unreasonable.

I am constrained to dissent from the conclusion reached by the other members of the court, and therefore vote to reverse the decree.

For affirmance—BEASLEY, C. J., DIXON, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, CLEMENT, COLE, GREEN, WHITAKER—11.

For reversal—PARKER—1.

Absent—DODD, LATHROP—2.