LeGendre *v.* Goodridge.

CLARA V. LEGENDRE et al.

*v.*

GEORGE H. GOODRIDGE and RUDOLPH F. RABE, executors of the last will and testament of Maria Mulock, deceased, and FANNY J. BYRNES.

1. Where a trustee occupies such a position that he cannot attack the validity of a deed by suit, without accusing himself of fraud or wanton neglect of professional duty, his *cestui que trust* has a right to seek relief in equity, against the deed, in his own name, making his trustee a party defendant.

2. A voluntary deed, conveying a valuable property, made by a mother, after she had reached an unusually advanced age, to a daughter, who had lived with her mother for several years on very affectionate terms, will not be set aside in the absence of proof of incapacity, fraud or undue influence.

3. Without proof of incapacity, fraud or undue influence, a deed which appears to have been executed under all the safeguards provided by law for the protection of the grantor against coercion and imposition, though supported by no consideration but love and affection, is entitled to stand on its own inherent strength.

4. To justify a decree invalidating a deed on the ground of undue influence, the court must be convinced that the free agency of the grantor, at the time he executed the deed, was so far destroyed that he would not have made the deed if left to himself.

5. Every citizen, of full age and sound mind, has a right to make such disposition of his property, by will or deed, as he, in the free exercise of his own will and judgment, uninfluenced by fraud or imposition, may see fit

On final hearing on bill, answer and proofs taken in open court.

*Mr. Oscar Keen* and *Mr. William S. Gummere*, for the complainants.

*Mr. Anthony Q. Keasbey*, for Mrs. Fanny J. Byrnes.

VAN FLEET, V. C.

The main question presented for decision in this case is, whether a deed made by Maria Mulock, now deceased, to Fanny J. Byrnes for lands on Market street, in the city of Newark, is a valid instrument or not. The deed bears date June 11th, 1880. Mrs. Mulock died testate on the 26th day of May, 1882. Her will bears date the 10th day of December, 1880. It was executed in the city of New York, where she resided at its date, and also when she died. It was admitted to probate there on the 28th day of February, 1884, and afterwards, and prior to the institution of this suit, filed and recorded here in conformity to the requirement of the statute. Mrs. Byrnes and the two female complainants were daughters of Mrs. Mulock, and the other complainant was her grandson. All four are beneficiaries under her will. After directing the payment of her debts, funeral expenses and the cost of a monument not to exceed $2,000, and after devising the house and premises known as 24 Cross street, in the city of Newark, to her executors in trust for the benefit of her daughter, Emma E. Durand, during life, with remainder in fee to her three daughters, Clara, Fanny and Maria, Mrs. Mulock, by her will, gave all the residue of her estate to her executors, with direction to convert it into money and then divide it into three equal shares; pay one share to Mrs. Byrnes, invest the other two thirds, and pay the income therefrom, in equal shares, to the complainants, Mrs. LeGendre and Mrs. LuGar, during life, and the principal, in equal shares, to their respective issue. William C. LeGendre is a son of Mrs. LeGendre. Mrs. Mulock died at the age of eighty-six. She was eighty-four when she executed the deed which the complainants ask to have declared void.

The complainants base their right to relief on two grounds—first, incapacity. Their bill alleges that Mrs. Mulock, for five

LeGendre v. Goodridge.

years prior to her death, had been in feeble health, and that her mind, for all that time, in consequence of sickness and old age, was so far impaired as to render her incapable of managing her property and business. And, second, undue influence. The complainants' bill also avers, that for five years prior to Mrs. Mulock's death, Mrs. Byrnes had lived with her mother, and had acted as her mother's agent and confidential adviser, and had had the care and management of all her mother's property, and that while she stood in this relation, she induced her mother to convey to her, without consideration, improved real estate worth at least $40,000, and withheld the deed from record until after her mother's death. If the case made by the bill is true in either of its branches, the deed assailed is invalid, and, as a necessary legal consequence, the lands which the deed attempted to convey still remained the property of Mrs. Mulock, and on her death passed by her will to her executors. Her executors were, therefore, the proper persons to bring this suit. If the deed is invalid, they now hold the legal title to the lands in trust for the complainants. The bill alleges that the executors have refused to sue. The proofs show that, prior to the institution of this suit, one of the executors—the other then being absent in a distant part of the West—was requested to bring a suit to test the validity of the deed in question, and that he refused to do so. No reasons were, however, stated to him why it was claimed that the deed was invalid, and he solicited no information on that subject. The omission of the complainants to state reasons, it is insisted, is fatal to their right to maintain this action. I cannot concur in that view. But, on the contrary, I must say, in view of the facts now before the court, I think it is entirely clear that the complainants had a right to bring this action without first asking the executors to bring it, or notifying the executors that they desired judicial relief against the deed. The complainants are the only persons who, as between the executors and themselves, have the least beneficial interest in the result of this suit. If the deed is set aside and the lands are recovered, they will go, it is true, to the executors, but not for their benefit, but for the benefit of the complainants. If a wrong exists, the complainants

are the persons who are injured, and not the executors, so that it would seem to be undeniable that, unless it be true that a person may suffer a wrong without having a right to demand judicial redress in his own name against the wrong-doer, this action is properly brought. But what is still more important, and, as it seems to me, decisive as to the right of the complainants, is the fact that the deed, which the complainants seek to have nullified, was drawn by and executed in the presence of that one of the executors who, in the administration of the testatrix's estate, has acted very much as he would have done if he had been the sole executor. He had been the grantor's professional adviser for some months prior to the execution of the deed, and continued to be her professional adviser up to the time of her death. He swears, that more than a month before the execution of the deed, the grantor informed him that she had made up her mind to make a gift of the property to the grantee, and instructed him to prepare a deed to the grantee for it, and that she subsequently asked him once or twice whether the deed had been prepared. He saw the grantor frequently, and had extended interviews with her about her business, both before and after the deed was executed. With such opportunities to look into the grantor's mental condition and gauge her capacity, and also to discern the influences which made her willing to make the gift, his duty all the while requiring him to protect her against her own improvidence as well as the improper influence of others, there would seem to be no doubt that the part which he took in the execution of the deed would necessarily make him its champion and defender. He could not attack its validity without accusing himself of fraud or wanton neglect of high professional duty. He occupied a position where, if he had consented to attack the validity of the deed by suit, he would have been compelled either to act contrary to his convictions of what he believed to be right, or to be faithless to his duty. The complainants have, I think, a clear right to be protected against the dangers and mishaps which would almost unavoidably attend the prosecution of a suit, on their behalf, by a person thus situated, and which, if once suffered, would most probably be beyond judicial reparation. In

my judgment, the complainant's right to maintain this action, in view of the facts just stated, is clear, and for the same reason I think the proper place of the executors, as parties to this suit, is that in which the complainants have put them, namely, as defendants.

The evidence respecting capacity leaves no doubt whatever on my mind that on the 11th day of June, 1880, when the deed in question was executed, Mrs. Mulock not only possessed sufficient mind to clearly understand what she was doing, and the legal consequences of her act, but that she still retained, in nearly full vigor, notwithstanding her great age, all her mental powers. Indeed, there is nothing in the case, in the nature of evidence, except her great age, which will justify even a suspicion that on the day in question she was not just as competent to do such an act as at any previous period in her life. The complainants' position on the question of capacity is somewhat anomalous·and inconsistent. They claim under a will made nearly six months subsequent to the date of the deed, which they say should be declared void for want of capacity in the grantor, and that the grantor had been in the same state of mental imbecility for nearly three years prior to the time when the deed was executed. The deed was executed on the eleventh day of June, 1880, and the will was not made until the 10th of the following December. Now, while perhaps it would not be entirely safe to say that a person incompetent, for want of mind, to make a valid deed, must, necessarily, also be incompetent to make a valid will, yet, in a case like the present, where incapacity is attributed to sickness and old age, and it appears that the will was made at a later date than the deed, so that the decay must, according to the usual course of nature, have been greater when the will was made than when the deed was made, it would seem to be plain that the court ought not, at the instance of persons claiming under the will, pronounce the deed invalid for lack of capacity in the grantor unless a very clear case of incapacity is made out. Here no such case is established; on the contrary, the proofs, in my judgment, show perfect capacity.

Nor do I think a case of undue influence has been established. The charge of the bill, that Mrs. Byrnes, for two or three years prior to the conveyance to her, had had the care and management of her mother's property, collected her rents and acted, in all respects, as her mother's agent and confidential adviser, is wholly unproved. There is nothing in the evidence which gives it the least support. Mrs. Byrnes lived with her mother from 1873 constantly up to the time of her mother's death. For the whole of this period her mother owned productive real estate situate in the cities of New York, Brooklyn and Newark, but Mrs. Byrnes never, at any time prior to the execution of the deed in question, exercised any care or management over any of it. She never negotiated a contract for letting or repairs, never paid taxes or procured insurance, and never collected any rent. During the whole of this period, the proofs, moreover, show, that her mother's real estate was managed by agents selected and appointed by her mother, and that Mrs. Byrnes had nothing whatever to do with its management. She assisted her mother, however, for about a year in making settlements with an agent who at that time had charge of all her mother's real estate, but Mrs. Mulock, at the end of that time, became suspicious of her agent's fidelity, and she, in consequence, directed him thereafter to submit his accounts to her counsel for examination, and after that the settlements were made with her counsel at his office. Mrs. Byrnes also attended to her mother's household affairs, did the marketing, carried messages and did errands for her mother, and sometimes carried money and checks to the bank to deposit for her mother, but the case is absolutely without evidence tending to show that in the conduct of her business affairs, Mrs. Byrnes ever exercised the least influence over her mother, or gave her mother any advice, or rendered any assistance except simply to do such things as her mother directed her to do. The evidence shows that the part she took in the transaction of her mother's business was rather that of the hands and feet of a servant or messenger than that of the mind of an adviser or agent. Her mother received herself all moneys payable to her, drew all her checks herself, wrote her letters and signed receipts

LeGendre *v.* Goodridge.

and other papers with her own hand, retained in her own possession all her securities and other valuables, and kept the key of her safe in her own possession. Mrs. Mulock seems in all things to have acted for herself, and in all ordinary matters not requiring professional advice or direction, to have acted on her own judgment. There is no proof that Mrs. Byrnes ever, in any business affair, guided or controlled her mother in the slightest degree, or that she ever attempted to do so. The case is not one, therefore, where the original position of the parties towards each other has been changed by the lapse of time—where the parent, in consequence of the decay and weakness of old age, has descended to the place of the child, and where the child, by reason of its greater mental and physical strength, has ascended to the place of the parent. The relations between the mother and the daughter are shown to have been tender and affectionate. The daughter was attentive, dutiful and helpful; the mother highly appreciated her daughter's faithfulness and loving attentions; she also had a high opinion of her daughter's capacity for business, but, so far as the evidence shows, she never put her daughter in control or charge of any part of her business, and never expressed a desire to do so, but up to the end remained herself in complete control of all her business and managed and controlled everything according to her own will and judgment.

As I view the case, it is utterly empty of everything, in the nature of evidence, giving the slightest support to the charge of undue influence, except that when the grantor made the deed she had reached an unusually advanced age, that the grantee was her daughter, and that she and the grantee had, for several years prior to the execution of the deed, lived together on very affectionate terms. But these facts, standing alone, without any evidence of controlling influence on the part of the grantee, or of weakness, or dependence or blind confidence on the part of the grantor, do not prove undue influence, or justify a presumption that it has been used. To justify a decree that undue influence has been exercised, in any case, the court must be convinced, either by proof of actual coercion, mental or physical, or by the evidence furnished by circumstances, that the free agency of the

grantor had been so far destroyed that the act brought in question would not have been done if the grantor had been left to himself and free from the coercive influence. It must appear that the act is the result of the domination of another mind rather than the expression of the mind of the grantor. But without such evidence, a deed which appears to have been executed under all the safeguards provided by law for the protection of the grantor against coercion and imposition, though voluntary and supported by no consideration but love and affection, is entitled to stand on its own inherent strength. The grantee is not required to prove that it was fairly obtained.

Thus far, the case has been mainly considered with a view of ascertaining whether, on a careful scrutiny of all the evidence, it appeared that the relations existing between Mrs. Byrnes and her mother were such, when the deed was executed, as to make it the duty of Mrs. Byrnes to show affirmatively, in order to maintain her title, that the deed was not the product of imposition, but that all was fair, open, voluntary and well understood. My conclusion, after a very thorough consideration of the evidence, is, that the facts will not warrant the imposition of that duty upon Mrs. Byrnes. But had a different result been reached on this branch of the case, I still think it would have been the duty of the court to uphold the deed.

The proof is clear that the purpose to make the deed was the spontaneous product of the grantor's mind. It originated entirely with her, without solicitation, hint or suggestion of any kind from the grantee. The daughter swears that she did nothing, designedly, to put a desire in her mother's heart or mind to make the gift, and that the first she knew that her mother contemplated making it was when she announced that she would make it. This was several weeks before the deed was executed. About the same time Mrs. Mulock informed her counsel of her purpose and instructed him to prepare a deed by which it should be carried into effect. This is all the evidence there is showing how the desire to make the gift originated, except that both witnesses swear that Mrs. Mulock said, when she made known her purpose, that she intended to make the gift as a reward to her

daughter for standing by her in a painful litigation she had had with her son. Unless, therefore, we enter the field of conjecture, and indulge in suspicions contrary to the explicit asseverations of the grantee, made under oath, corroborated, as they are, by the evidence of the counsel of Mrs. Mulock, the case must be regarded as wholly barren of proof going to show that the deed is the product of any sort of trick or fraud. If the evidence is permitted to guide the judgment, the fact must be regarded as established, that the deed gives expression to ·the deliberate, voluntary and well-understood purpose of Mrs. Mulock's mind and heart, and that the only part which Mrs. Byrnes took in the transaction was to become the passive recipient of her mother's generosity.

The deed was prepared in the presence of Mrs. Mulock, by her counsel and under her direction alone. Mrs. Byrnes had nothing to do with its preparation or execution. She was not in the room where it was prepared and executed until after it was ready for delivery. She was then called in and an actual delivery of the deed made to her. The deed does not, in an important respect, conform to Mrs. Mulock's intentions. She intended to reserve to herself the rents of the premises conveyed during her life. She said so to her daughter when she first told her that she meant to make the gift, and she also so informed her counsel on the day that he prepared the deed. He omitted to insert a clause reserving the rents. His excuse is, that he felt so sure that the daughter would respect the wishes of her mother, that he did not deem it necessary to insert the reservation. This is no excuse. It was his duty to see that the deed was so drawn as to be a perfect exponent of Mrs. Mulock's intentions. No injury, however, resulted to Mrs. Mulock from the omission. The rents were paid to her up to the time of her death. Mrs. Byrnes was in no way responsible for the omission ; indeed, it has not been shown that she knew of it until after her mother's death. She had nothing to do with the preparation of the deed, was not present in the room where it was prepared, and did not hear, so far as the evidence shows, the instruction which her mother gave for its preparation. The only part she took in the

transaction was simply to accept the deed in the form in which her mother delivered it to her. She cannot, therefore, under any known rule of justice, be held answerable for failure of the deed to express fully the purposes of her mother. The case would, in this respect, perhaps, have stood upon a widely different footing had Mrs. Byrnes procured the deed to be prepared and then taken it to her mother and induced her mother, without consultation with counsel, to execute it. The delay in recording the deed is satisfactorily explained. At the time of its delivery, Mrs. Mulock stated that it must not be recorded until after her death. This fact is proved by the gentleman who drew the deed. Mrs. Mulock gave no reason; she was under no duty to do so; her daughter had no right to require a reason, but she occupied a position towards her mother where a proper sense of her obligations made it her duty to scrupulously respect her mother's wishes. If the daughter had put the deed on record, contrary to her mother's wishes, it might then very properly have been said that her conduct expressed a fear respecting the validity of her deed which cannot now be attributed to her.

The proofs show that Mrs. Mulock made over, in her lifetime, to Mrs. Byrnes, by way of gift, a large part of her estate. If a mother was under a legal duty to distribute her estate equally among her children, or to so distribute it that those least able to take care of themselves should receive the largest shares, there would be little difficulty in reaching the conclusion, in this case, that a redistribution, on a radically different plan, should be made. But that is not the law. Mrs. Mulock, like any other citizen of full age and sound mind, had an unquestionable right to make such a disposition of her property, either by deed or will, as she, in the free exercise of her own will and judgment, uninfluenced by fraud or any sort of imposition, thought fit. And the question now to be decided is, whether or not she thus acted in making the deed now on trial. I think the proofs show that she did. The complainants' bill must therefore be dismissed, with costs.