Although Aristophanes characterized old age as "but a second childhood," the statement lacks universality. Solid *Page 567 
intelligence erected upon experience, and sound judgment built upon reflection reside in many elderly people.
Illness abruptly seized Mrs. Ida Kerlin on May 18th, 1943, and she died on May 24th, 1943, at the age of 72. In 1940, during the last and fatal sickness of her husband, she established for reasons of convenience a joint "survivorship" bank account to the credit of herself and her daughter Mrs. Viola Maher. On March 26th, 1943, she conveyed her residential property to Mrs. Maher and the latter's husband, Joseph Henry Maher, Sr. The evidence reveals that during those years Mrs. Kerlin grew old gracefully. While time had brought troubles and cares, age had not carried away her mind. She did not exhibit any physical or mental infirmities. The principal object of the complainants in the prosecution of the present cause is to invalidate the conveyance of the real estate.
An abundant supply of authorities pertinent to a cause of this nature will be found in my opinion in Alpaugh v. Alpaugh,135 N.J. Eq. 200; 37 Atl. Rep. 2d 825.
Basically it should be understood that a person of full age and sound mind has a right except against creditors to make such disposition of his property, by will or deed, as he, in the free exercise of his own volition and judgment, uninfluenced by fraud or imposition, may desire. LeGendre v. Goodridge, 46 N.J. Eq. 419; 19 Atl. Rep. 543; affirmed, 48 N.J. Eq. 308;23 Atl. Rep. 581; Kelso v. Kelso, 95 N.J. Eq. 544; 123 Atl. Rep. 250;
affirmed, 96 N.J. Eq. 354; 124 Atl. Rep. 763; Farley v. FirstCamden, c., Trust Co., 107 N.J. Eq. 272; 152 Atl. Rep. 245;Chandler v. Hardgrove, 124 N.J. Eq. 516; 2 Atl. Rep. 2d661.
The question follows whether this deceased grantor thus acted in the execution and delivery of the deed here impugned. I shall accordingly summarize the facts and the inferences reasonably to be drawn from them.
The decedent's husband died on March 12th, 1940. Her children had married and established homes of their own. Time was rolling along its ceaseless course. She was to live alone and be left to shift for herself, except for the occasional *Page 568 
favors to be anticipated from her daughters. Like numerous parents so circumstanced, she incubated the idea of conveying her homestead (then worth about $3,500) to her daughter and son-in-law, by whom she would be supported and with whom she would reside during her declining years. She resolved to adopt that plan, and she communicated her proposal to her daughter and son-in-law. It was duly considered by them and they assented. They did not own the house in which they were residing.
There is not a grain of evidence that the project was initiated by the defendants or embarked upon by virtue of any persuasive influence exerted by either of them. True, the grantee, Mrs. Maher, was the daughter of the grantor, but no presumption of undue influence arises solely from the existence of such relationship. Soper v. Cisco, 85 N.J. Eq. 165;95 Atl. Rep. 1016; Chandler v. Hardgrove, supra. To invoke such a presumption the complainants must first prove that the grantee occupied a dominant position over her mother towards whom she then stood in a relationship of a confidential andquasi-fiduciary character.
True, also, the daughter, Mrs. Maher, during a period of nine years "lived across the street" from her mother, and her opportunities to aid and visit her mother were more numerous than those of her sisters. But as Vice-Chancellor Berry so aptly stated in the Chandler Case: "* * * it is clear that the dominance must be of the mind, and the dependence must be upon the mind rather than upon the hands and feet of the donee."
Where as in the present case the promise of the grantees to support the grantor for life is merely verbal and aside from the promise the transfer would appear to be improvident, the rule requiring competent independent advice becomes applicable. In reFulper, 99 N.J. Eq. 293; 132 Atl. Rep. 834. The notion that the omission to express the verbal promise in the deed constitutes of itself evidence of fraud is no longer accredited. Voorhees v.Christie, 96 N.J. Eq. 337, 339; 125 Atl. Rep. 13.
I have thus far only imparted a fraction of the factual story. The grantor (I so denominate her because I am satisfied *Page 569 
she regarded the transaction as a bargain and not a gift) was informed by the defendants of their acceptance of her offer and she thereupon personally visited the office of her attorney, Mr. Raymond J. Stewart, to whom she privately disclosed her intention to convey her residence to her daughter and son-in-law who, in return, engaged to support and maintain her during the remainder of her life.
Mr. Stewart was evidently mindful of those transfers in which the benefit of competent independent advice to the transferor is a material factor. He relates that he became the more cautious and circumspect in his consultation with the grantor when he discovered that she entertained a firm abhorrence of any covenant or reference in the proposed deed relative to her future support and maintenance.
A review of the testimony of Mr. Stewart leaves one at a loss to conjecture in which significant respect his information and advice to the grantor could have been more instructive and exhaustive. He acquainted her with the operative differences between dispositions by will and by deed. He informed her of all the legal intrinsicalities of her undertaking and forewarned her of the hazardous and prejudicial consequences that could possibly eventuate from her adventitious act. In particular he directed her attention to the ability of the grantees to sell the property at any time they should so desire and to her disadvantage in compelling the grantees to support her in the absence of some express covenant in the deed. He ultimately endeavored to induce her to permit him to prepare a separate agreement to evidence the obligation of the grantees to maintain her. She rebelled. She emphatically asserted her absolute confidence in her daughter and son-in-law, and her avowed aversion to the execution of any formal and business-like instrument concerning her future support was unalterable.
The deed was prepared by Mr. Stewart in conformity with the grantor's wishes, and Mr. Stewart testified that upon his presentation of the deed to the grantor for execution on a later date, he repeated to the grantor much that he had said to her at their previous conference. Cf. Bumm v. Smyth, *Page 570 98 N.J. Eq. 133; 129 Atl. Rep. 713. I am not aware of any reason whatever to sweep the testimony of Mr. Stewart out of this case.
Incidentally, I may perhaps pertinently divulge that at the final hearing, I observed that although the consideration is stated in the deed to have been "one dollar," there were attached to the instrument documentary revenue stamps in the amount of $3.35. My curiosity anent that observation was pacified when I learned that Mr. Stewart, recognizing the age of the grantor and the situation of the parties, estimated the probable cost to the grantees of supporting the grantor during her life expectancy and adopting that figure as a monetary substitute for the true consideration, he thereby determined the requisite amount of revenue stamps to be affixed to the deed. Superficially, that may be an infinitesimal circumstance, but it has massive corroborative persuasiveness in detecting the genuine character of the transaction. Viewed in the aspect of a compact other than a gift, it cannot be said that the grantor obeyed impetuosity or indulged in improvidence.
The insistence of counsel for the complainants that in the face of my opinion in Alpaugh v. Alpaugh, supra, consistency obliges me to grant a decree for the complainants in the present cause, induces me to elucidate the error of their supposition. It is the function of advocates to put forth everything in the contour and complexion of evidence and prior judicial pronouncements which they conceive may be in some degree conducive to a favorable decision for their clients. It is well. The more elaborate the argumentation, the more imperishable the decision. My observations have convinced me that where a cautious judge injudiciously dives overboard, the proximate cause is usually attributable to the failure of counsel, aware of the legal hazard, to forewarn him of the rock beneath his field of view.
In the Alpaugh Case I concluded: "The daughter in the natural conditions occupied a relationship of a confidential andquasi-fiduciary character toward her parents," and "it is not manifest that the grantors thoroughly understood and *Page 571 
appreciated the complete effect and unrestricted consequence of the transfer in all its bearings, nor that they were afforded that disinterested, independent advice essential in such transferences where the grantor or donor leaves himself or herself an object of charity." My factual convictions in that case were obviously unidentical, converse, and antithetic with my conclusions in the instant case.
It remains to say that the pretended claim of the complainants to exact from the defendants a share in the decedent's joint bank account (as well the so-called school account) evaporated at the final hearing. The decedent died intestate; letters of administration of her estate have never been applied for or issued. Cf. Buchanan v. Buchanan, 75 N.J. Eq. 274;71 Atl. Rep. 745; Trenton v. Howell, 132 N.J. Eq. 125; 27 Atl. Rep.
2d 609; McTamney v. McTamney, 138 N.J. Eq. 28;46 Atl. Rep. 2d 444. Moreover the entire proceeds of the joint account and more were disbursed by the defendant Mrs. Maher in payment of the funeral and burial expenses of the decedent.
A decree will be advised dismissing the bill of complaint.