THOMAS COLLINS

*v.*

JOHN COLLINS.

[Filed September 6th, 1902.]

1. Where, at the time of executing a voluntary deed from a father to his son it was understood that another son was to have the rents of the property for life, but no reservation to this effect was made in the deed,. such omission was fatal, and the deed should be set aside.

2. A father, about eighty years old and infirm, conveyed all his property to a son for a nominal consideration, reserving only a life estate. The property was originally purchased with the earnings of the father and his sons, another son having furnished most of the price. It appears that the conveyance was drawn by a solicitor who was to derive a pecuniary benefit from the consummation of the transaction ; that the deed was the product of temporary irritation on the part of the grantor ; that the conveyance was unfair in itself and so regarded by the grantee at the time, and that the act was improvident.—*Held*, that the conveyance should be permitted to stand only as security for the money paid by the grantee to the solicitor as part of the consideration.

On final hearing.

*Mr. Alan H. Strong,* for the complainant.

*Mr. Charles T. Cowenhoven,* for the defendant.

STÈVENS, V. C.

The bill in this case was filed to set aside, as constructively fraudulent, two conveyances, the first made by Thomas Collins to his son John Collins, on December 9th, 1898, of a house and lot in Hamilton street, and the second, by the same grantor to the same grantee, on August 13th, 1901, of a house and three lots in Division street.

The grantor is seventy-nine or eighty years old. He is an Irishman by birth, and he came to this country in the year 1865 or 1866. He worked at first as a day laborer and afterwards made

a living by selling milk, butter and eggs. He had three sons, John, Thomas and James. James died several years ago, leaving one son. The above properties were bought with money earned by Thomas Collins, Sr., and by his three sons. The evidence would seem to indicate that Thomas had contributed most toward the purchase-money, James gave but little. The title to the above lots and another lot of small value, in Bethune street, was taken in the father's name. It has never been seriously asserted by the sons that he was not the real owner.

Thomas Collins, Sr., was, apparently, of a quarrelsome disposition. Several years ago he ejected John from a part of the property, and in July, 1901, he ejected Thomas. He is old and infirm. His head troubles him. His speech is so thick that it was with difficulty that he could be understood on the witness-stand.

The deed to John for the Hamilton street property was a pure gift. It is expressed to be for the sum of $1. It was understood at the time that Thomas was to have the rents of the property for his life, and he has, in fact, been permitted to take them. But no reservation to this effect was made in the deed. This is fatal to it. *Mulock* v. *Mulock, 4 Stew. Eq. 594; Martling* v. *Martling, 2 Dick. Ch. Rep. 122; White* v. *White, 15 Dick. Ch. Rep. 104.*

As to the conveyance of the Division street lots, it is doubtful, on the testimony, whether it was intended as a gift or whether it was made for a consideration confessedly inadequate. Both John and his father, who, of course, are on opposite sides in this case, testify to facts showing that it was, if anything, a gift. John swears repeatedly and in the most explicit manner that it was a gift, and not a purchase, while Mr. Cowenhoven, the solicitor who prepared the deed, swears that it was made for the consideration expressed in it, viz., $500. Viewed in either light, it seems to me that it cannot stand. It was substantially a conveyance of everything that Thomas Collins had. Although the deed is, in terms, "subject to the life estate of the said Thomas Collins," it practically leaves him almost destitute. It is testified to by Thomas Collins, Sr., that the house would not rent for more than $8 or $10 a month. As the taxes amount

to nearly $50, and as the insurance and repairs have to be provided for, there would be very little left. It is admitted that Thomas, the son, contributed out of his earnings to a considerable part of the money which went to pay for the property. To disinherit him would be most unfair. The conveyance was made in a moment of extreme, and, as appears in the sequel, temporary, irritation, and just after Thomas had been ejected.

John, the grantee, testifies "all he wanted was to take the place away from his son [Thomas] and his wife, and if I didn't take it, he was going to deed it over to his nephew." He further says, "I told him (my father) he was not doing right by my brother when he done so." The grantor does not appear to have been advised of the improvidence of his act. Mr. Cowenhoven did, no doubt, as he testifies, explain the contents of the paper, but he did not tell the grantor that he was doing an improvident thing, and he did not explain the possible consequence of that improvidence. He put no power of revocation in the deed.

If the transaction is to be regarded as one founded on a money consideration, that consideration was very inadequate, and, such as it was, one-half of it was to go, not to the grantor, but to Mr. Cowenhoven, in payment for legal services. This was, according to Mr. Cowenhoven's testimony, part of the bargain. He says:

"I then spoke as to the consideration to be named in the deed; there was about $240, I think, then due me. * * * Then I said there is some back money—I will find out precisely what that sum of money is in a few days—that John was to pay me and that *the balance* was to be paid as John and his father had agreed."

The legal situation was that John got the property for a trifling sum (the life estate being necessarily of very short duration), and Mr. Cowenhoven got a benefit from the transaction in having his bill paid; the father has not even received the inconsiderable residue that was, according to Mr. Cowenhoven, to come to him. In this aspect of the matter we have, therefore, both an inadequate consideration and the following elements of inequality—*first,* a deed prepared by a gentleman

of such high character and standing that I would not for a moment think of imputing to him any wrong motives, but nevertheless by a gentleman who was to derive a pecuniary benefit from the consummation of the transaction; *second,* a deed the product of temporary irritation on the part of the grantor; *third,* a conveyance unfair in itself, and so regarded at the time, even by the grantee, and *fourth,* an utterly improvident act. If there had been before any difficulty in procuring a loan because of the similarity of name and because Thomas, the son, was in possession, that difficulty was at an end. The judgment in ejectment had vindicated the father's ownership and the son had been deprived of his possession. In no aspect of the case can John be looked upon as an innocent or *bona fide* purchaser for value. Indeed, he expressly repudiates that character, and denies that he became under any legal obligation to pay any consideration whatever, and has, in fact, in addition to the small loans he advanced before the deed was made, only paid the solicitor. Since the decision in the case of *Coffey* v. *Sullivan, 18 Dick. Ch. Rep. 296,* it is impossible to sustain the transaction. It presents a much more inequitable case than was there presented.

As, however, the money actually advanced by John was nearly all of it advanced because of his getting this conveyance, and as he who asks equity should do equity, the deed should, I think, stand security for the money paid. Under the circumstances of the case neither party should have costs against the other.