MARY SOPER, complainant and respondent,

*v.*

MARY S. F. CISCO and JOSEPH CISCO, her husband, defendants and appellants.

[Submitted March 22d, 1915. Decided November 15th, 1915.]

1. A deed for lands made by a grantor in consideration of "support during her natural life" therein recited, is not a gift, but is founded upon a valuable consideration, and when made by one having the mental capacity to make it, and without fraud, duress or undue influence, will be sustained.

2. The test of mental capacity to make a deed is that a person shall have ability to understand the nature and effect of the act in which he is engaged and the business he is transacting.

3. No presumption of undue influence in the case of a conveyance by a parent to a child, in consideration of support of the grantor, arises from the mere relation of the parties, and, therefore, the burden is upon the party attacking the conveyance to show undue influence.

4. The rule that undue influence is not to be presumed from the mere relation of parent and child, in case of a conveyance from a parent to a child, does not conflict with the broad rule that where parties stand in confidential relation to each other a conveyance from the weaker to the dominant party is presumed to result from undue influence, and, therefore, where facts are shown, other than the mere relation of parent and child, establishing between the parties a confidential relation in which the child is the dominant party, a conveyance from the parent to the child is presumed to be tainted with undue influence, and the burden is upon the child to show the *bona fides* of the transaction.

5. A mother, seventy-seven years of age, in the full possession of her mental faculties and in good physical health, made a deed for her homestead property to her daughter, forty-five years of age, who had been her chief support for fifteen years prior thereto. The consideration for the deed was $300 and "support during her natural life" therein expressed. It was drawn by and acknowledged before a competent lawyer, with whom the mother conferred privately, and was recorded immediately. The property was then worth about $5,000, but of small rental value and not readily marketable. The bargain was made at the solicitation of the mother, the daughter being reluctant. No effort was made to keep the transaction secret. Before and at the time of making the deed and until eleven years thereafter, when failing mental faculties rendered some restraint necessary, the mother had perfect liberty of

action and freely saw such of her other children as she wished to see and who wished to see her. Her daughter supported the mother satisfactorily at the homestead for sixteen years after the deed was made, when the mother, without any fault of the daughter, went away and refused to return.—*Held*, that the bargain was a natural and provident one for the mother to make and was not the product of undue influence, and will not be set aside for failure to show that the mother had "independent advice."

6. He who, without adequate excuse, delays asserting his rights until the proofs respecting the transaction out of which he claims his rights arose, are so indeterminate and obscure that it is impossible for the court to see whether what is asserted to be justice to him is not injustice to his adversary, has no right to relief.

7. A grantor, having made a conveyance of her property to her daughter in consideration of $300 and "support during her natural life" therein expressed, and having at the time the undoubted mental capacity to make it, and who delays challenging its validity for sixteen years and until the lawyer who transacted the business is dead, and the memory of other witnesses respecting important facts is dim, and the mental faculties and memory of the grantor herself have been so impaired as to render her testimony valueless, will not be permitted to set aside such conveyance when it appears that during all such time she had been supported by her daughter satisfactorily, and the grantor for eleven years after the conveyance was well aware that she had made it and was under no physical or mental disability nor prevented by coercion or poverty from filing a bill to set it aside if she had desired to do so.

8. After a partial performance by the grantee of his obligation to support the grantor, the grantor may not abandon the same or prevent further performance upon the part of the grantee and take advantage of such failure to secure equitable aid to cancel or rescind the deed.

9. When an obligation upon the part of the grantee to support the grantor is created by deed and there is no express direction where and how the support should be furnished, the grantor is entitled to require it to be furnished at any place he may select if it can be supplied there without needless or unnecessary expense.

10. Where a grantor under a deed is entitled to support, and, at the age of 93, when her mental faculties are so impaired as to render it unjust to hold her to a strict accountability for her attitude, declines to be supported at the place where she has been satisfactorily supported for sixteen years, and makes no demand for support elsewhere but files a bill for cancellation of the deed, which relief must be denied by the court, equity requires that at the option of the complainant provision for prompt and adequate support shall be secured to her in that proceeding.

On appeal from a decree of the court of chancery advised by Advisory Master John Franklin Fort.

*Messrs. Bilder & Bilder,* for the appellants.

*Messrs. Lefferts & Lefferts,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal by the defendants from a decree of the court of chancery, setting aside two deeds of conveyance, made by the complainant to the defendant Mary S. F. Cisco, of two tracts of land, aggregating about twelve acres, situate at Lodi, Bergen county, New Jersey. The deeds are dated respectively, March 30th, 1897, and November 5th, 1898, each being recorded on the day of their respective dates.

The complainant is the mother of Mary S. F. Cisco, and the widow of Benjamin Soper, and was residing at the time the conveyances were made with Mary and the latter's husband in the homestead located upon the tract in question.

About the middle of March, 1897, the complainant expressed a desire to convey the property to her daughter Mary, in consideration of $300 and support during her natural life, and also in the consideration of the fact that Mary had cared for her and supported her for fifteen years prior thereto.

On March 30th, 1897, the complainant attended at the office of Ernest Koester, a counselor-at-law, at Hackensack, and at her request, he prepared and she executed, acknowledged and delivered the 1897 deed. At the same time, there was paid to the complainant $300, for which she signed a receipt, witnessed by Mr. Koester and his stenographer. The deed expressed the consideration as follows: "In consideration of the sum of one dollar, filial affection, and support during her natural life."

Shortly prior to November 5th, 1898, the complainant told her daughter Mary that she had another lot which she still owned, and which had not been transferred, and that she desired to sell it for its assessed value, which was fifty dollars, which proposal was accepted and a deed executed for the lot. The deed was drawn by and acknowledged before A. H. G. Maidment, an attorney-at-law, at his office in Hackensack.

At the time of the conveyance of 1897, the complainant represented that the premises were free and clear of all encumbrances, but in 1900, the defendants learned that the complainant in 1896 had given a lease of the premises for the term of her natural life to her son Oliver Soper. After an expenditure of $200 by the defendants, that interest was obtained from Oliver.

Ernest Koester, the lawyer who drew the 1897 deed and took complainant's acknowledgment thereto, died on August 2d, 1909.

·This bill of complaint was filed August 30th, 1913, and charged that the deeds were obtained by fraud, duress and undue influence. The answer of the defendants denies such charges.

The learned advisory master found that the deeds in question were "mere voluntary gifts," that the complainant was without "independent advice," and that by the transfer, she parted with her whole estate, thereby impoverishing herself, and advised a decree that the deeds were "from the execution and delivery of the same, voidable and of no force or effect, at the option of the complainant," and directing that they be delivered up and canceled and the property re-conveyed to the complainant.

After careful consideration we are of the opinion that the conclusion of the advisory master cannot be sustained, for reasons we will now state.

It is quite clear that these conveyances were not "mere voluntary gifts," and in that respect are to be distinguished from those set aside in *Slack* v. *Rees, 66 N. J. Eq. 447*, and *Post* v. *Hagan, 71 N. J. Eq.* 235.

The conveyance of 1898 was for a consideration of $50. It is so stated in the deed. That the $50 was paid to the complainant is demonstrated by the production of the receipt, the testimony of the lawyer who drew the receipt upon the occasion of the execution and delivery of the deed, and by the entry in complainant's savings bank deposit book. We pause to remark that this deed is of relatively small importance because it appears that $50 was probably a fair price, for the land conveyed by it, that being its valuation for taxation purposes.

It is equally plain that the conveyance of 1897 was not a "mere voluntary gift." It appears to our satisfaction that $300 was paid to the complainant. This is demonstrated by the production of the receipt witnessed by the lawyer who drew the deed, and his stenographer, and by the entry in the complainant's savings bank deposit book.

But apart from such money consideration the deed itself recites that it was made in consideration of "support during her natural life," and in that respect this case is to be distinguished from *Mott* v. *Mott, 49 N. J. Eq. 192*, and *Walsh* v. *Harkey, 69 Atl. Rep. 726.* Now a deed for lands made by a grantor in consideration of "support during her natural life" therein recited, is not a gift, but is founded upon a valuable consideration, and when made by one having the mental capacity to make it, and without fraud, duress or undue influence, will be sustained. *Collins* v. *Collins, 45 N. J. Eq. 813; Holland* v. *John, 60 N. J. Eq. 435.*

The test of mental capacity to make a deed is that a person shall have ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. It appears beyond dispute, and it is not seriously questioned, that the complainant had such mental capacity. The fact that there was an outstanding lease not mentioned by the complainant does not show mental incapacity, but rather shows, as the evidence indicates, her willingness to conceal the fact in order to make a bargain with her daughter which complainant regarded as advantageous to her.

It remains to be considered whether the deeds were obtained by fraud, duress or undue influence.

The real contention of the complainant is that these deeds were the product of that species of fraud known as undue influence.

We think that contention is not well founded.

No presumption of undue influence in the case of conveyance by parent to child in consideration of support of the grantor, arises from the mere relation of the parties, and therefore, the burden is upon the party attacking the conveyance to show undue influence. *Collins* v. *Collins, 45 N. J. Eq. 813.*

Of course the rule that undue influence is not to be presumed from the mere relation of parent and child, in case of a conveyance from a parent to a child, does not conflict with the broad rule that where parties stand in a confidential relation to each other a conveyance from the weaker to the dominant party is presumed to result from undue influence; and therefore, where facts are shown, other than the mere relation of parent and child, establishing between the parties a confidential relation in which the child is the dominant party, a conveyance from the parent to such child is presumed to be tainted with undue influence, and the burden is upon the child to show the *bona fides* of the transaction. *Mott* v. *Mott, 49 N. J. Eq. 192.* See also *17 Ann. Cas. 989, note.*

At the time these conveyances were made the complainant was about seventy-seven years of age. She was living with her daughter, the defendant, who was then about forty-five years of age, and was practically dependent upon her daughter. No doubt the application of the rule stated casts upon the daughter the burden of showing the conveyance was without undue influence.

Whether or not the deeds were the product of undue influence of course depends upon the relation of the parties and the facts and circumstances leading up and surrounding the execution of the deeds. We shall hereinafter deal with the effect of the impossibility, by reason of the lapse of time, of the production of full proof with respect to these essential matters.

We turn now to a statement of what the evidence discloses, and what it does not disclose, concerning these relations and transactions.

In 1897 and 1898 when the deeds were made, the complainant was living at the homestead (the property in question) with her daughter Mary, the defendant. Mary had lived there all her life. Her father, in his later years, was an invalid. For fifteen years she ministered to him with loving care. The other children had left home. During these last fifteen years of her father's life Mary was the chief support of the family, her parents being without substantial means except the premises in question. The property was not readily marketable. It had

but slight rental value, most of the twelve acres being low lands and unproductive, and the buildings being in a dilapidated condition. Mary acquired somehow some cows and chickens, and by selling milk and eggs, and making and selling ladies' hats and bonnets, managed to support her father and mother until her father's death in 1895 at the age of eighty-seven years. That she did this substantially without help, seems not seriously questioned.

But it is said that at this early day she had conceived the idea of getting the property, and that such was the motive for her self-denying conduct. We think not. We think rather that hers is the true version. At the hearing she was asked "Why did you struggle so?" She replied:

"I didn't want to see my father die in want, and I supported him for fifteen years. He was a good man, and when I saw them all  *  *  * putting nothing in I said, 'Father, don't cry, I will stay with you, and you shall never want,' and I dressed him beautifully and gave him everything I could, and that is why I kept the cows for milk."

When her father died in 1895 Mary was forty-three years old. She remained at the homestead, with the acquiescence of her mother, who went to live with her married daughter, Helen Butterworth, near by in Garfield, Bergen county. In 1897 Mary married the defendant, Joseph Cisco, and was contemplating moving with her husband to New York, when the complainant returned unsolicited to the homestead, with the avowed purpose of making her home with her daughter, and proposed that Mr. Cisco purchase the homestead property. This Cisco declined to do stating that much of it was worthless, being covered by water. At that time the property was valued by the assessor for taxation purposes at $1,300. It probably was worth about $5,000. She then proposed to deed the property to Mary in consideration of past services, $300, and support during her natural life. Mary and her husband seem to have been unwilling to accept such a conveyance chiefly because they wished to go to New York to live unburdened with their mother's care and support. However, they finally yielded, and a few weeks thereafter the complainant, and Mary, and Mr. Cisco went to the office of Mr.

Koester, in Hackensack, where the deed was prepared and delivered.

Of course what occurred there is of the utmost importance upon the question of undue influence, and we will deal with this phase of the case more particularly hereinafter.

At that time, according to the undisputed evidence, the complainant was at least of average mental and physical health for a person of her age. She could read and write; her eyesight was good and her hearing fair. According to the testimony of the defendants she transacted the business with Mr. Koester herself, being alone with him in his private office, and the defendants waiting in the outer office until the deed was ready for delivery. The deed was recorded immediately. No effort was made to keep the transaction secret. The complainant frequently mentioned it to those with whom she came in contact, and the other children seem to have been apprised of it in due course of events and many years before this bill was filed. It is quite clear that they knew of it as early as 1904.

We have no further evidence worthy of consideration as to the circumstances surrounding the execution of the deed. Sixteen years elapsed before this bill was filed. Meanwhile Mr. Koester died and the complainant's mental faculties have so far failed that she can give no intelligent account of what then took place. Indeed we are constrained to think that her memory is so far gone, and is so unreliable, that we cannot give any weight at all to her testimony.

Following the execution of the deed, the complainant lived with the defendants happily for sixteen years. She was supported by them there at the homestead, was furnished with ample food and clothing, was nursed and furnished medicine and medical attendance when ill. She visited and received visits from her daughter Helen and from friends and neighbors. As we shall hereafter have occasion to point out she saw freely such of her other children as she chose to see and who wished to see her.

For eleven or twelve years her mental and physical health was usually good considering her advanced age. But about 1908 or 1909 she began to fail both physically and mentally. For

a time her physical ailments rendered almost constant nursing necessary. Thereafter she improved physically but continued to fail mentally. In the last year or two her mental condition rendered it necessary to put more or less restraint upon her. Her old friend and physician testifies that in these last years she "has not been herself." She became restive under this necessary restraint, and in May, 1913, she evaded the vigilance of her daughter Mary and went to the home of her daughter Helen Butterworth near by.

Shortly thereafter the defendant Joseph Cisco went to Mrs. Butterworth's and sought to induce the complainant to return to her home, but she declined to do so. In August following complainant filed this bill, acting with the assistance, and no doubt at the instigation of her daughter Helen Butterworth, and her son Warren Soper. The son Oliver had long since died and the son John took no interest in this controversy.

During these sixteen years while the defendants were thus supporting and caring for the complainant, they paid all of the expenses. They paid the insurance upon the property. They made improvements thereon amounting to over $1,100. They paid assessments amounting to about $340. They paid the taxes amounting to over $1,600. During all these years they received no income from the property, it being unproductive. At no time did its rental exceed $25 per month, but no doubt its present market value, due chiefly to improvements in the neighborhood, is largely in excess of what its rental value indicates.

This outline of the facts and circumstances surrounding and leading up to this conveyance, when taken in connection with other facts to which we shall hereafter refer, shows, we think, that the bargain in which it resulted was a natural and provident one for the complainant to make, and that it was not the product of undue influence.

But it is contended that this conveyance should be set aside for want of "independent advice." We think not. It is true that if a child upon whom a parent by reason of advanced years or infirmity has in fact come to be dependent, accepts from such dependent parent a voluntary conveyance of all of

his or her estate, a court of equity, moved by the apparent improvidence of such gift, will presume that the donor did not appreciate the consequence to himself of his voluntary act, and hence will place upon the donee the burden of overcoming this presumption by showing that the donor in making the conveyance had the benefit of proper independent advice. *Post* v. *Hagan, 71 N. J. Eq. 234.* It is also true that proper independent advice, in this connection, means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly of its legal effect, but who was, furthermore, so disassociated from the interests of the donee as to be in position to advise with the donor impartially and confidentially as to the consequences to himself of his proposed benefaction. *Post* v. *Hagan, supra.* In the present case we should hesitate before saying that the defendants have not borne such burden, because as we have pointed out, the proof seems to indicate that complainant conferred privately with the quite competent lawyer who drew the deed. But however that may be it is plain that under the facts of this case no such burden is cast upon the defendants. The conveyance was not a voluntary gift. It was for a valuable consideration. The bargain in which it resulted was a natural and provident one for the complainant to make and the defendants have borne the burden of showing that it was not the product of undue influence.

But if we were to take a different view, and were also to assume that they have failed to bear that burden, or the burden of showing absence of undue influence, still this complainant could not succeed in setting aside these deeds in the circumstances disclosed by this record.

The general rule is well settled that he who, without adequate excuse, delays asserting his rights until the proofs respecting the transaction, out of which he claims his rights arose, are so indeterminate and obscure that it is impossible for the court to see whether what is asserted to be justice to him is not injustice to his adversary, has no right to relief. *McCartin* v. *Traphagen, 43 N. J. Eq. 324; affirmed, 45 N. J. Eq. 265.*

Now sixteen years intervened between the making of the conveyance in question and the filing of the bill. The result was that at the time of hearing the lawyer who drew and took complainant's acknowledgment of the 1897 deed was dead, and the lawyer who drew and took her acknowledgment of the 1898 deed had no reliable memory of the transaction. The memory of other witnesses with regard to important facts had become dim. The complainant herself had reached such an extreme age, and her mental faculties had become so far impaired as to render her testimony practically valueless. Meanwhile defendants had supported complainant and had expended large sums on the property. Such delay, in such circumstances, without adequate excuse, is a bar to relief.

We find no excuse for the delay. At the time of these conveyances and for eleven or twelve years thereafter the complainant was in the full possession of her faculties, and enjoyed fair health. She was well aware that she had made the conveyances. She was not either directly or indirectly prevented by the defendants from taking steps to avoid the deeds. She had the financial ability to protect her rights if she thought they had been violated. She was not restrained of her liberty or freedom of action. She saw and visited such of her other children as she wished to see and visit, and who wished to see her. No doubt at times the relations between her and her other children were strained. Her daughter Helen for years before and after these conveyances were made seems to have been rather inattentive to her. No doubt complainant resented that. For seventeen years prior to the making of the deeds her son Warren seems not to have visited his parents nor contributed to their support. Indeed not until 1903, six years after the conveyances were made, did he visit his mother, and then not again until 1908, when and later he manifested more interest. It is clear that complainant resented his inconsiderate conduct. This is made quite clear by the letter which she wrote him in 1909 requesting him to stay away and in which, not without some reason it seems, she characterized him as a "dangerous man." This reasonable attitude of the complainant

towards Warren, in our opinion, is the reason for her disinclination to see Warren, and Helen when accompanied by him, which she exhibited in the years 1908 and 1909.

As we have pointed out the complainant has left the defendants' home and seems unwilling to return and receive support and maintenance there as before. Of course that fact cannot justify setting aside these conveyances. The rule is that after a partial performance by the grantee of his obligation to support the grantor, the grantor may not abandon the same or prevent further performance upon the part of the grantee and take advantage of such failure to secure equitable aid to cancel or rescind the deed. See *25 L. R. A.* (*N. S.*) *932, note.*

But there remains the obligation to support the complainant during her natural life. Where, as here, there is no express direction where and how the support should be furnished, the person entitled to receive it is held to have a right to require it to be furnished at any place he may select, if it can be supplied there without needless or unreasonable expense. *13 Cyc. 699.* In the present case, there has been no demand for outside support. But looking beneath the surface, and considering the impaired mental condition of the complainant, and her extreme age, we perceive that it would be inequitable to hold her to a strict accountability for her conduct and apparent attitude. Equity requires that at the option of the complainant provision for prompt and adequate "support during her natural life" shall be secured to her in this proceeding.

The decree below will be reversed and the record remitted to the court of chancery for further proceedings, in accordance with this opinion.

Costs will be awarded the appellant in this court.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, BLACK, TERHUNE, HEPPENHEIMER—5.

*For reversal*—GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, VREDENBURGH, WHITE, WILLIAMS—9.