*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 14.

*For reversal*—None.

CATHERINE DALY, appellant,

*v.*

AGNES EICHKOFF et al., respondents.

[Decided February 21st, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bentley, who rendered the following opinion:

"This is a bill to cancel a deed. It alleges that the complainant is of advanced years, infirm, of weak mind, and easily influenced, and that the defendant Agnes Eichkoff had, for a long time before the execution of the conveyance attacked, been the complainant's agent in the care of certain real estate and bank accounts in which she made deposits and withdrawals for the complainant, who relied upon her entirely in all business transactions, and in whom she had complete trust and confidence. That under these circumstances the defendant mentioned, on the 3d day of July, 1917, induced the complainant to make a deed of some of her real estate, reserving therein only an estate for life, and to become absolute upon the complainant's death. That because of her infirmities the complainant was unable to properly comprehend the nature of her act, and performed the same

98 N. J. Eq. Daly v. Eichkoff.

without the benefit of independent advice while under the domination of the said defendant; and that such conveyance was made without any consideration whatsoever.

"To this bill the defendants have answered, denying all of the important allegations of the bill, but admitting the execution of the deed mentioned, alleging, however, that it was a valid conveyance upon a sufficient consideration.

"The complainant is a very aged woman who does not know her age, but is apparently upward of eighty years old. The defendant Agnes Eichkoff is thirty-eight years of age, having come to the United States at the age of eighteen for the purpose of residing with and assisting the complainant, who is her aunt. From that time, in 1905 until 1910, she resided with the complainant, and, notwithstanding the latter's account of their relationship, I am satisfied became a third hand to her in the running of her home and managing her property, except for about a year, when she lived out with a family. There has been considerable dispute as to how much service she performed, but I think it is clear, from the testimony, that their relations were most intimate.

"The defendant wife swears that her sister, in the presence of the complainant, explained that the defendant's father had divided all his property among his other children, leaving none for Mrs. Eichkoff, for the reason that Mrs. Daly had promised to provide for her at the time that Mrs. Daly visited Ireland and saw Mrs. Eichkoff's father. She also testified, without contradiction, that Mrs. Daly said nothing upon hearing Mrs. Eichkoff's sister so remark. The defendant also testified that the complainant had said that she was going to leave the property in question to Mrs. Eichkoff. From all of this it is impossible to escape the conviction that there was a tacit understanding between the complainant and her niece, that, in return for the latter's services, and, because of affection, she was eventually to have the property in dispute.

"In 1911, after the marriage of the defendants, the complainant contemplated building upon this land, but had not enough money to finance the same. Thereupon, she bor-

rowed from the defendants the sum of $3,000, executing a bond and mortgage upon the property in question, to secure the repayment of the loan, to bear interest at the rate of four per cent. a year. This is very significant of the friendship that existed between the parties. It is exceedingly illuminating that this younger woman was willing to forego one-third of the interest she might fairly have expected and could have readily secured from any other borrower in days when loans of that amount were not looked upon with contempt. In fact, it does seem to me, from all the testimony, that defendants' counsel is justified in having said that whenever these two women dealt with one another, the elder had the better of the bargain.

"After the mortgage just mentioned had been paid off, and on the 2d day of July, 1917, the transaction was initiated between the complainant and Mrs. Eichkoff that has led to this litigation. The stories of the two parties engaged differ widely, and, in fact, irreconcilably. The complainant says that on that day, after innumerable and almost constant importunities by her niece, she allowed the latter to take her [then greatly enfeebled in health and unwillingly] to the office of Mr. William C. Cudlipp, a practicing attorney, for the purpose of making a will, wherein she was to devise the property in question to Mrs. Eichkoff. That upon arriving at the lawyer's office Mrs. Eichkoff objected to the gift being made by will, and insisted instead that the transfer be effected by an immediate conveyance. She says that at that time and place Mrs. Eichkoff forced a thousand dollars in cash upon her, although she objected that she was not making a sale and did not desire the money. However, she eventually took the same and deposited it to her account in the bank. The testimony of the defendant, on the other hand, is that the complainant, without solicitation and without informing her of the purpose, took her to Mr. Cudlipp's office on the day mentioned, and, after arriving there, disclosed her purpose, which was to borrow the sum of $3,000 from Mrs. Eichkoff for the purpose of purchasing an entirely different piece of property, and to repay her therefor by mak-

ing a will, in which the premises in question should be devised to Mrs. Eichkoff.

"Mrs. Eichkoff says that she objected to that method of securing her, because of the risk that the will would be contested by the testatrix's direct heirs-at-law, and that it was eventually suggested, not by her, but by Mr. Cudlipp, that the complainant carry out her intentions by the perfectly simple and obvious means of a conveyance in fee, reserving to herself a life estate. That method was agreed upon, and, having taken his instructions, Mr. Cudlipp prepared the deed, and the two women returned to his office on the following day, July 3d, when the deed was executed by the complainant and forthwith recorded. Mrs. Eichkoff says that, when Mr. Cudlipp's suggestion was made, the complainant said, 'I will do that, but I have very little money on hand. If she gives to me $3,000 I will deed to her the property.' She says that she then told her aunt that she did not have $3,000 with her and would have to talk to her husband, and that for that reason, although the deed was prepared, Mrs. Daly refused to proceed until she had the money, and that this explains why the matter went over until the following day. On July 3d she says that there was no one-thousand-dollar transaction, but that she delivered to the complainant the said sum of $3,000 in the form of a cashier's check drawn by the Commercial Trust Company of New Jersey, in the sum of $3,000, dated July 2d, 1917, to the order of Frank A. Eichkoff, and endorsed by the payee to Catherine Daly, the complainant, by whom it was endorsed and deposited to her account. It is in line with so much of Mrs. Daly's testimony that she stoutly and emphatically denied any $3,000 transaction ever having taken place, except the one in 1911, which had been terminated by the discharge of the bond and mortgage three years before the circumstances just related. I think it is clear that great confusion exists in the mind of the complainant. What she really had in mind concerning a $1,000 transaction was an entirely separate matter that was consummated later in the same month of July, when she borrowed that sum for the purpose of buying

another house on Concord street. In this, as in the previous one, Mrs. Eichkoff is corroborated by another cashier's check, dated July 20th, 1917, to the order of both defendants, and endorsed by them and the complainant, into whose account the proceeds were deposited, together with the sum of $213, in cash to make up the amount of the deposit shown in the complainant's account.

"Besides the testimony of Mrs. Eichkoff and the documentary corroboration mentioned, Mr. Cudlipp very powerfully supports her account of this transaction. A point has been made in the argument of the fact that he does not swear as positively to the occurrence of six years before as he might have had they transpired but a week past. It seems to me that this should beget more confidence in what he says rather than cast any doubt as to the truth of the facts contained in his testimony. He does testify to the best of his recollection in harmony with the main facts of Mrs. Eichkoff's testimony and in complete accord with so much of the documentary evidence as relates to the part he played in the matter. It is scarcely credible that he could have dreamed facts favorable to the defendants' case, and, of course, it is perfectly apparent that there can be no corrupt bias, or he would have more closely approximated what she said.

"Until 1922, these two women appear to have lived upon the friendliest terms, which were destroyed by two things: The complainant wished the defendant to share equally with her the purchase price of a summer home she wished to buy, with the characteristic provision, however, that she should take title in severalty in herself. To this they would not accede. About the same time, learning that her aunt was about to sell at a handsome profit the property into which she had put the $1,000 borrowed from the defendants in the end of July, 1917, and for which they held no security, Mrs. Eichkoff requested the return of that money. At this time some of the complainant's grandchildren had come to live with her, naturally supplanting Mrs. Eichkoff, and from these circumstances the rupture took place.

"Complainant's counsel, in his argument, relies upon that line of cases typified by *Haydock* v. *Haydock, 34 N. J. Eq. 570; Slack* v. *Rees, 66 N. J. Eq. 447; Hall* v. *Otterson, 52 N. J. Eq. 522; Post* v. *Hagen, 71 N. J. Eq. 234,* and *Giuditta* v. *Bonacci, 95 N. J. Eq. 147,* embracing the so-called doctrine of independent advice. My difficulties with this position are threefold—

"*First.* As I have already intimated, I feel that while there was a very close relation existing between these two women, it cannot be said that the niece exercised any domination over the mind of the aunt. It seems to me that, on the other hand, in all their relations it was the latter who secured the lion's share of the benefits of their dealings with one another.

"*Secondly.* She performed the very act from which this suit springs on the advice of a reputable lawyer of good standing, chosen by her, and, subsequently, employed in another matter, if, in fact, not having been retained by her in several previous ones, while he never had any professional relations with Mrs. Eichkoff.

"*Thirdly.* The doctrine is aimed only at voluntary gifts and conveyances, while in the present case the complainant received the very substantial consideration of $3,000 for an estate in remainder, which I am inclined to think may have been worth at that time no more. This woman, aged as she is, presented no indication to my untrained eye of approaching dissolution, and it may be that by the time her niece comes into the enjoyment of what she purchased she may find that she will have paid at least dollar for dollar what it was worth.

"I will dismiss the bill."

*Mr. Alexander Simpson,* for the appellant.

*Messrs. Melosh, Morten & Melosh,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Bentley.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS, JJ.    15.

*For reversal*—None.

---

DIAMOND WALL CEMENT COMPANY, appellant,

*v.*

BOARD OF EDUCATION OF TOWNSHIP OF RIDGEWOOD et al.,
respondents.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, whose opinion is reported in *97 N. J. Eq. 65*.

*Messrs. Bilder & Bilder,* for the complainants.

*Mr. Cornelius Doremus* and *Messrs. Forl & Shipman,* for the defendant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Backes.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS, JJ.    15.

*For reversal*—None.