The bill is to annul a deed made by father to son, in consideration of the son's promise to keep the father for the remainder *Page 399 
of his life. The gravamen is that the son failed to live up to his promise. The charge is not true.
These are the facts: The father, now seventy-five years old, abandoned his wife and children years ago. If advancing years have mellowed him into the present stern, self-willed and capricious old man, his son's picture of a wicked husband and cruel father has not been overdrawn. After the mother passed away, the family scattered. This son, whose physical infirmities reach back to his mother's suffering, was obliged to seek outdoor life, and took to farming in New York State, just above the Jersey line. The father lived alone in Nutley, estranged from his children. He owned his home and had about $4,000 in bank. Father and son had not communicated or met in twenty years. Selfishly calculating that he could settle himself comfortably in his son's home, the old man sent a postal card, asking that he come down to see him as soon as possible, and the son came. Greetings were perfunctory. The father bluntly stated his proposition, that he would convey his house to the son if he would keep him the rest of his life. The son, knowing his disposition, suggested that he first try it out on the farm for three months, to see if it would be satisfactory, to which the father refused to listen, and, upon the son's acceptance, insisted upon going at once to his lawyer's office, where the deed was prepared and delivered; and he accompanied the son to his home. He stayed six months, and without complaining. He now says the food was not to his liking and needs, the bedding was unsatisfactory, his grandchildren annoyed and cursed him, and that he heard the defendant say to one of them he was going to lock him out. The proofs show he was taken in as a member of the family and well treated. After he returned to Nutley, he said to a friend who inquired why he had left, having told her three months previously, that he was never so happy in all his life, that he "just walked out on them;" as he had walked out on his wife and children years ago.
Counsel for the complainant, in an elaborate brief, argues that his client is entitled to relief on the theory of presumed undue influence and want of competent advice. They are not *Page 400 
issues in the bill or the proofs. These grounds for equitable relief are in no sense involved in the cause.
The complainant, though aged, was in full mental vigor. The natural relation between father and son was not a confidential relation. They dealt at arms length, with the father dominating. The deal did not result in the father's impoverishment; he had $4,000 left, and support for the remainder of his life was assured. The principles underlying the decisions in Slack v.Rees, 66 N.J. Eq. 447; Post v. Hagan, 71 N.J. Eq. 234; Reeves
v. White, 84 N.J. Eq. 661; In re Fulper, 99 N.J. Eq. 293, from which counsel copiously quotes, have no bearing. The rulings inCollins v. Collins, 45 N.J. Eq. 813; Soper v. Cisco, 85 N.J. Eq. 165,
and Voorhees v. Christie, 96 N.J. Eq. 337, which counsel overlooked, govern. The deed will stand.
The son, however, cannot keep the house without paying the price; he must support his father. The contemplation of the parties was that this was to be done at the son's home, but that is now out of the question; the old man would not be happy there. The equitable course pointed out by Mr. Justice Trenchard inSoper v. Cisco, supra, will be followed; although one of the reasons for adopting it in that case, mental impairment, is not present here. The learned justice there says, "where, as here, there is no express direction where and how the support should be furnished, the person entitled to receive it is held to have a right to require it to be furnished at any place he may select, if it can be supplied there without needless or unreasonable expense. 13 Cyc. 699. In the present case, there has been no demand for outside support. But looking beneath the surface, and considering the impaired mental condition of the complainant, and her extreme age, we perceive that it would be inequitable to hold her to a strict accountability for her conduct and apparent attitude. Equity requires that at the option of the complainant provision for prompt and adequate `support during her natural life' shall be secured to her in this proceeding."
The son expresses his willingness to support his father elsewhere. Unless the parties can agree upon an allowance, it will be determined upon further testimony to be taken. *Page 401