This bill is filed to set aside an assignment of certain shares of stock of the Asbury Park and Ocean Grove Bank and of the Apog Corporation assigned to the defendants Emma *Page 456 
Craven and Flora Hallarin by the complainant's decedent on January 8th, 1915, and to recover dividends paid to the defendant Flora Hallarin by the bank and the corporation since that date. The controversy arises out of the following circumstances:
In December, 1934, complainant's decedent, Anna M. Matthews, was ninety-four years of age, and for eight years had been suffering from arthritis and confined to her bed in an absolutely helpless condition; she was unable to move hand or foot without assistance, was partially blind, and was naturally lacking in mental vigor as an incident to her advanced age. Her entire estate at this time consisted of the stock which is the subject of this suit, which had been issued to her upon the reorganization of the Asbury Park and Ocean Grove Bank, and which represented cash deposits in that bank to the credit of the decedent at the time it was closed amounting to $9,997.70. Under the terms of the agreements for the reorganization of that bank, participation preferred stock certificates were issued to depositors, and certain assets of the closed bank were turned over to the Apog Corporation for the purpose of liquidation. The participation certificates are subject to redemption and retirement out of the proceeds of the liquidation of the bank's assets delivered to the Apog Corporation, and one hundred per cent. redemption is guaranteed by the reorganized bank. During 1933, dividends on this stock amounted to $1,026.07. Since the stock was assigned, the defendant Flora Hallarin has received approximately $600 in dividends and payment of a further dividend of approximately $250 was enjoined upon the filing of this bill.
In December, 1934, the defendant Emma Craven, a cousin of the decedent, and her daughter, the defendant Flora Hallarin, had the decedent move from her home at 1018 Corlies avenue, Neptune, New Jersey, to their home in Red Bank, New Jersey. On January 8th, 1935, the stock was assigned to the defendants Emma Craven and Flora Hallarin. Emma Craven thereafter assigned her interest to her daughter, the defendant Flora Hallarin. On January 27th, 1935, nineteen *Page 457 
days after the transfer, complainant's decedent died. The effect of the assignment was to strip the decedent of her entire possessions.
The assignment is attacked on the ground that it was obtained by undue influence, was improvident and made without the benefit of independent advice. The defense is that the transfer was not the result of undue influence, but was entirely voluntary; that it was not improvident, because it was made in consideration of defendant's agreement to support and maintain the decedent during the remainder of her life; and, further, in consideration of the payment of decedent's note for $100 held by the defendant Flora Hallarin. And it is argued that under these circumstances, the doctrine of independent advice does not apply.
It is a fact that the decedent did not have the benefit of independent advice at any time in connection with the transfer of said stock. If there was any agreement for support as claimed by this defendant (the defendant Craven did not appear), it was verbal only. It finds support only in the testimony of this defendant and her husband. The $100 note mentioned remained in the possession of this defendant uncanceled until the date of the final hearing at which it was produced. If that is a valid obligation of decedent, a claim for its payment may still be filed with the complainant as administratrix cum testamentoannexo. There are other debts for which claims have been filed.
Counsel for the defendant Flora Hallarin relies upon Reeves
v. White, 84 N.J. Eq. 661; Soper v. Cisco, 85 N.J. Eq. 165;Voorhees v. Christie, 96 N.J. Eq. 337, and Daly v.Eichkoff, 98 N.J. Eq. 404, in support of his contention that the doctrine of independent advice does not apply to this case.
It is unnecessary to consider the question of undue influence as it is obvious that a confidential relationship existed at the time of this transfer, and that the defendant was the dominant personality. Haydock v. Haydock's Executors, 34 N.J. Eq. 570;Soper v. Cisco, supra; In re Fulper, 99 N.J. Eq. 293;Christian v. Canfield, 108 N.J. Eq. 547; Peppler *Page 458 
v. Roffe, 122 N.J. Eq. 510; Croker v. Clegg, 123 N.J. Eq. 332.
Obviously, also, the transfer was improvident, and unless defendant's mere verbal promise of support renders the doctrine of independent advice inapplicable, the transfer must be set aside regardless of the fact of undue influence.
The cases relied upon by counsel for defendant, and many others, were ably and thoroughly analyzed and discussed by Vice-Chancellor Buchanan in In re Fulper, supra (at pp. 302 to313, inclusive). At page 310 Vice-Chancellor Buchanan said:
"Prior to the Daly v. Eichkoff opinion, therefore, it would seem that the rule (and a thoroughly logical one) to be deduced from the determinations in the court of chancery and the court of errors and appeals was that the rule as to independent advice applied to all cases of `improvident' transfer to a fiduciary orquasi-fiduciary, whether or not there was consideration for the transfer; that the test was not whether or not there was consideration for the transfer, but was the transfer improvident. If the transfer was a gift, and left the transferor without sufficient means to support himself, it was improvident, and the transferee must prove the independent advice; so, also, if there was consideration but the consideration was inadequate and the net result of the exchange was to leave the transferor without means of support, and that a written promise to support the transferor for life was sufficiently adequate to prevent the transfer from being improvident, but a verbal promise was not."
He then discussed Voorhees v. Christie, supra, and other cases involving the rule of independent advice and reached the conclusion (at p. 313) "that a transfer, which would be deemed improvident if there were no consideration, is not saved from being improvident by a mere verbal promise to support for life."
He was clearly of the opinion that in Daly v. Eichkoff,supra, the appellate court had no intention of further restricting the application of the rule of independent advice because the decision in that case was rested upon the broad grounds that there was no dominant relationship; that there had been *Page 459 
independent advice; that the consideration was adequate, and that the transfer was not improvident. The pith of Vice-Chancellor Buchanan's reasoning in support of his conclusion that the doctrine of independent advice applies where there is a mere verbal promise to support for life appears on page 309 of the report, as follows:
"If, then, the purpose of the rule is to prevent one under the influence of a dominant confidential relationship from divesting himself irrevocably of so much of his property as to leave himself a probable object of charity unless he shall have had independent advice, of what moment is it whether he so divests himself by gift or by a transfer for which the consideration is so inadequate or so insecure that the net result thereof is to make it likely that he may be an object of charity? Is the protection of the rule to be withheld in a case in which it would otherwise be applied, merely because the transferor has received in return a consideration worth one dollar, or a hundred dollars, or five hundred dollars? If so, for what reason? None is readily apparent." (Italics mine.)
I agree entirely with Vice-Chancellor Buchanan's conclusion. However, since the decision of the court of errors and appeals inPeppler v. Roffe, supra, and Croker v. Clegg, supra, there can no longer be any doubt but that the doctrine of independent advice is applicable to a transfer such as that here involved and which is supported only by a mere verbal promise of support.
In Croker v. Clegg, supra (at p. 334), Mr. Justice Heher, speaking for the court of errors and appeals, said:
"The rationale of this doctrine seems to be this: That even though the gift be not the product of undue influence exerted by the donee, yet the donor may not, due to the great trust reposed in the donee or his own weakness and sense of dependency, have appreciated the nature and consequences of his act, and, in the absence of advice of the character adverted to, this is conclusively presumed as a means of insuring the weaker party against the consequences of his own unthinking and unappreciated improvidence or an unconscionable advantage *Page 460 
secured by the dominant one. The donor's liberty of action is not thus unduly untrammeled. He may make the improvident gift in utter disregard of such advice, and if he does, it is a valid act, provided he has the requisite capacity and it is otherwise legally unexceptionable."
After all, it seems to me that each case must stand upon its own bottom and that no hard and fast rule can be laid down for the application of the rule of independent advice. No rule of equity is entirely automatic, responding infallibly to the pressure of a button or the turning of a dial. Equitable contact may be made even though the dialing is imperfect; and if so, equitable relief results irrespective of any rule of thumb. The ultimate question in every case is whether or not the contract or the transfer under consideration is fair and just, and all in good faith; or whether the circumstances spell out a fraud, or an unconscionable bargain.
There is no doubt in my mind but that the circumstances attending the stock transfer here involved call for equitable intervention. I will advise a decree for the complainant in accordance with these conclusions. *Page 461