My conception of the facts as disclosed by the evidence in this cause renders needless an exposition of the equitable principles enunciated by our courts in Haydock v. Haydock, *Page 201 34 N.J. Eq. 570; Mott v. Mott, 49 N.J. Eq. 192;22 Atl. Rep. 997; Hall v. Otterson, 52 N.J. Eq. 522; 28 Atl. Rep. 907;affirmed, 53 N.J. Eq. 695; 35 Atl. Rep. 1130; Collins v.Collins, 63 N.J. Eq. 602; 52 Atl. Rep. 1115; Thorp v. Smith,65 N.J. Eq. 400; 54 Atl. Rep. 412; affirming, 63 N.J. Eq. 70;51 Atl. Rep. 437; Slack v. Rees, 66 N.J. Eq. 447;59 Atl. Rep. 466; Albert v. Haeberly, 68 N.J. Eq. 664; 61 Atl. Rep. 380;Post v. Hagan, 71 N.J. Eq. 234; 65 Atl. Rep. 1026; Pearce v.Stines, 79 N.J. Eq. 51; 80 Atl. Rep. 941; Hunt v. Naylor,84 N.J. Eq. 646; 95 Atl. Rep. 138; Soper v. Cisco, 85 N.J. Eq. 165; 95 Atl. Rep. 1016; Powers v. Finnerty, 94 N.J. Eq. 193;118 Atl. Rep. 415; In re Fulper, 99 N.J. Eq. 293;132 Atl. Rep. 834; Peppler v. Roffe, 122 N.J. Eq. 510; 194 Atl. Rep. 548;Croker v. Clegg, 123 N.J. Eq. 332; 197 Atl. Rep. 13; Matthews
v. Craven, 124 N.J. Eq. 455; 2 Atl. Rep. 2d 176.
The evidence has been thoughtfully considered, and a detailed statement of it seems likewise to be unnecessary. Contributing to an expeditious determination of the controversy, I shall accordingly limit this memorandum to a mere declaration of my conclusions.
It is my conviction that the defendant Edith Alpaugh did not indulge in any deception or exert any actual undue influence upon her parents or her father in the two transactions to which this litigation relates. I am more inclined to believe that she was drawn somewhat irresistibly into both. The preponderant motive that induced her to apply her savings to the project of remodeling the homestead property in the endeavor to make it productive of income was undoubtedly her desire to preserve the home for the continued enjoyment of her parents, with whom she lived.
It is, however, evident that in conveying the residential property, the mother divested herself of her only asset. So, also, did the father in disposing of the unimproved parcel of land. The daughter in the natural conditions occupied a relationship of a confidential and quasi-fiduciary character toward her parents. It is not manifest that the grantors thoroughly understood and appreciated the complete effect *Page 202 
and unrestricted consequence of the transfer in all its bearings, nor that they were afforded that disinterested, independent advice essential in such transferences where the grantor or donor leaves himself or herself an object of charity.
Moreover, there was indubitably a tacit assent that the parents would continue to reside in the building and receive support from the income derived from it under the superintendence of the daughter, but no such covenant was embodied in either deed.Vide, Mott v. Mott, supra; Slack v. Rees, supra (at p.450).
Independent advice within the signification of our adjudicated cases imports that the donor or grantor had the preliminary benefit of conferring fully and privately upon the subject of the intended gift or conveyance with a person who was not only competent to inform him or her accurately concerning the legal effect of the transfer, but who was furthermore so disassociated from the interests of the donee or grantee as to be free and able to disclose the possible disadvantageous consequences to the donor or grantor of a disposition so exhaustive. To sustain the transaction it must affirmatively appear that it was "well understood" by the grantor.
I am also convinced that while there was little, if any, expectation that the parents or either of them would ever be financially able to repay their daughter, yet the contemporaneous intention was that the delivery and contemplated effect of the deed to the homestead would secure the daughter for her pecuniary advancements for the remodeling of the house, and the expenses incidental to its maintenance. It was expected that the daughter would look to the property for her reimbursement.
Since the father and his daughter, Edith, did not agree upon a definite price for the parcel of land subsequently conveyed to her, I resolve that the conveyance to her of the lot was likewise a means of securing the daughter for such sums of money as she might give to her father for his accommodation.
The two deeds will be decreed to be mortgages imposing liens upon the respective properties. A reference will be *Page 203 
made to a master to ascertain the moneys expended by the defendant Edith Alpaugh for the renovation of the homestead, and for such maintenance charges as repairs, insurance, and taxes, as well as of the income received; also the sum advanced by that defendant to her father upon the security of the deed for the unimproved lot and the tax disbursements and other charges, if any, incident to its retention.
All further equities will await the presentation of the master's report.