The complainants desire a decree invalidating a deed executed and acknowledged by them on October 29th, 1941, by which they conveyed to the defendant two parcels of real *Page 62 
estate designated as Lots Nos. 872 and 873 in an area known as East Trenton Heights, in Hamilton Township, Mercer County.
The trial of the cause has introduced for consideration an assortment of factual elements: (1) the ages and manifest illiteracy of the complainants; (2) the relationship of trust and confidence, if any, between the complainants and the defendant; (3) the improvidence of the conveyance; (4) the lack of independent advice; and (5) the failure to include in the instrument a clause of reservation expressive of the intention and understanding of the parties. To those factual elements, as they may be resolved, the established equitable principles must be applied. Vide, Alpaugh v. Alpaugh, 135 N.J. Eq. 200;37 Atl. Rep. 2d 825; Campana v. Angelini, 132 N.J. Eq. 285;28 Atl. Rep. 2d 223, and cases therein cited.
Counsel for the defendant, in the prelude to his very comprehensive brief, suggests that in cases of this nature, there is generally "an instinctive sympathy for the `underdog transferor.'" Yes, in a very modified sense perhaps that is true. Traditionally, equity is alert to afford protection to the infants and to the aged, to the mentally incompetent, to the victims of deception, and to the rights of minorities. The intrusions of equity are probably disappointing to those who are obliged to surrender their coveted gains, but in such interventions inheres one of the virtues of equity jurisprudence.
The complainants, husband and wife, are of foreign birth. Their testimony was elicited through the agency of an interpreter. It seems to be conceded that they are uneducated and illiterate. They are now advanced in years. The defendant is their niece, and she has evidently been a favorite relative. Indeed, at intervals she has resided with the complainants.
At the hearing the complainants ignorantly pretended that at the time they signed the deed they did not understand or realize that they were making any disposition whatever of their property. Cross-examination promptly exposed the falsity and incredibility of their pretensions in that regard.
The complainants were well known to the "case worker" of the Hamilton Township Welfare Board. In 1941 the complainants *Page 63 
were in dire need of financial aid. They were distraught with the anxiety that their home would be sold to recover accumulated delinquent taxes. The defendant was pursuing a remunerative employment, and with her earnings (and perhaps with some contributions from her brother) she rescued the property from the distressing tax liens, amounting to less than $300. Her beneficence in that emergency undoubtedly inspired the complainants not only with a sensibility of gratitude and affection for the defendant, but also a natural consciousness of their dependence upon her.
The circumstances do not so much affirmatively exhibit the dominant position of the defendant as they portray the subordinate dependence of the complainants. I do not infer that the defendant by her generous act had reduced the complainants to a state of complete subjection to her will, but I am impelled to believe that she had won their implicit trust and confidence.
It is with a realization of such an existing relationship between the parties that we view the complexion of the succeeding events. The complainants continued to be impecunious. The property was their domicile, and it and its contents comprised their only asset. The transfer of the property was discussed. The defendant employed a real estate agent to prepare the deed. The complainants executed and acknowledged the deed before the real estate agent as a notary public and delivered it to the defendant without any monetary consideration but with the understanding that the defendant would thereafter maintain the premises and permit the complainants to occupy the residence "as long as they lived." No reservation to that effect was embodied in the deed or in any other writing. It must not be overlooked that the right which the complainants sought to reserve was an interest and estate in real property. See Mott v. Mott, 49 N.J. Eq. 192;22 Atl. Rep. 997; White v. White, 60 N.J. Eq. 104, 115;45 Atl. Rep. 767; Collins v. Collins, 63 N.J. Eq. 602;52 Atl. Rep. 1115; Matthews v. Craven, 124 N.J. Eq. 455; 2 Atl. Rep. 2d176; Cf. Soper v. Cisco, 85 N.J. Eq. 165; 95 Atl. Rep. 1016.
The lamentable consequence of the transaction in its literal *Page 64 
and practical effect was to utterly impoverish the complainants. Did the complainants comprehend that they were engaging in such a thriftless and imprudent act? I think not. I adopt the conviction that the complainants in their ignorance supposed that they were assuring themselves of the possession of their home during their respective lives, devising, so to speak, the property to their niece, the defendant, upon the death of the survivor of them, and that the defendant, knowing that the property would ultimately be hers, would continue to defray the current maintenance expenses such as taxes, insurance, and repairs. Obviously, the deed here impugned fails to effectuate such a purpose.
Assuredly, the complainants did not achieve their part of the bargain, and in ignoring it they did not have the benefit of that independent, competent, and impartial advice which would have impressed them with a realization and a complete appreciation of the practical effects and consequences of their act. Slack v.Rees, 66 N.J. Eq. 447; 59 Atl. Rep. 466; Post v. Hagan,71 N.J. Eq. 234; 65 Atl. Rep. 1026; In re Fulper, 99 N.J. Eq. 293;132 Atl. Rep. 834; Peppler v. Roffe, 122 N.J. Eq. 510;194 Atl. Rep. 548; Alpaugh v. Alpaugh, supra.
The complainants remained unmolested in their occupancy of the premises until the defendant began to prepare for approaching matrimony; whereupon the defendant, asserting her ownership, requested the use of all of the second floor and a portion of the first floor for herself. Suffice to state that this brittle situation immediately emptied the whole matter into a cauldron of embroilment. Trouble so often originates in a loose thread.
I am not unaware of the decisions of which Daly v. Eichkoff,98 N.J. Eq. 404; 129 Atl. Rep. 620; Spatz v. Spatz, 115 N.J. Eq. 398; 171 Atl. Rep. 163, and Wolf v. Palisades Trust andGuaranty Co., 121 N.J. Eq. 385; 190 Atl. Rep. 94, are typical, but it is observable that in those cases one or more of the factual elements to which I referred earlier in this opinion were not sustained by the evidence.
I am disposed to annul the deed, but only upon equitable terms. The deed should be permitted to stand as security for *Page 65 
the maintenance charges such as repairs, insurance, and taxes incurred and defrayed by the defendant. Apprehending that the differences of the parties on this branch of the cause will be narrow, I would impress upon counsel the importance of making a determined effort to agree upon the amount and propriety of such disbursements. Failing such, a reference to a master will be occasioned. Final decree will await such agreement, or the presentation of the master's report. *Page 66