The complainants, Margaret A. Smyth Bumm and Austin F. Smyth, and the defendants, Marie C. Smyth, Rosalie M. Smyth and Leanor Smyth, were the sons and daughters and the only heirs-at-law of Margaret Ann Smyth, who died April 6th, 1922, and the purpose of the bill is to set aside a deed dated May 1st, 1920, by which she conveyed certain property in Atlantic City to the said Marie C. Smyth, one of the daughters. This deed is in form duly acknowledged and recorded.
Mrs. Smyth had been a widow for many years, and she had been assisted in the management of her property by her daughters, but by Marie more than the others.
The history of this deed, as well as of one conveying several properties in Philadelphia to Marie, and dated and signed on the same day, is: That some time in the year 1919 she called upon John F.X. Reis, a counselor-at-law of this state, who had represented her in several matters since 1915, and who, at her request, prepared the two deeds, including the one in question, and delivered them to Mrs. Smyth on April 15th, 1919, and received his fee for preparing them. Mr. Reis' statement as to what Mrs. Smyth said to him when she requested him to prepare these deeds was:
"She stated that she wanted to convey — wanted me to prepare these two deeds and convey the property set forth in these two deeds to Marie C. Smyth, her daughter; that she could trust her better than the other girls; that she couldn't be easily influenced by anyone to convey away these properties or to do anything with these properties. That also she would take care of her sisters. That the one daughter, Margaret Bumm, was married, and she had a husband who could provide for her, also that she had given her son, Austin Smyth, money, had put him up in partnership, and she considered she had provided for him sufficiently, and she wanted to take care of the three girls, Leanor, Rosalie and Marie. She said at that time Rosalie was keeping company or was acquainted with a young man that she didn't especially like, and she said Rosalie wasn't as strong in mind as she figured *Page 135 
Marie was, and she would like Marie to be the head of the house."
When asked what he told her about the effect of such a conveyance he said: "I told her that it would be to her interest to consider conveying these properties to the daughter absolutely, because the daughter could refuse to provide any support for her, could refuse to take care of her, could dispose of these properties and use the money as she pleased, that it was dangerous for her to place the trust that she was placing in her, and she had better consider the matter seriously before she signed the deeds, and she said she would consider my advice," and when he delivered the deeds to her she said, "She would consider signing the deeds."
Mr. Ries never again had the deeds in his possession until he called at the house on May 1st, 1920, in response to a summons by Marie to call, when the deeds were produced by Marie and signed by Mrs. Smyth, and the acknowledgments thereto taken by Mr. Ries. In taking the acknowledgments, the deeds were read to her by Mr. Ries, and she was asked, "Do you acknowledge that you sign, seal and deliver this paper as your voluntary act and deed," and she answered "yes."
After Mrs. Smyth had secured these deeds from Mr. Ries, she evidently took them to Philadelphia and placed them in a closet.
Marie C. Smyth testified that about two weeks before the signing of the deeds her mother had told her to bring the deeds to Atlantic City, as she was going to sign them, that she, Marie, was unable to find them, and on the 22d day of April, 1920, her mother told her the deeds were in the top draw of her closet in the house, 258 South Third street, Philadelphia. That on the 29th day of April she brought them down to Atlantic City.
She further testified that she called Mr. Ries upon her own initiative, and that nothing had been said to her mother or by her mother to her about giving her the Atlantic City properties at that time.
Mrs. Smyth suffered from a stroke of apoplexy on the 27th day of April, 1920. This stroke was so severe that, in the *Page 136 
presence of the physician, about nine o'clock of that evening, she received the last rites of her church under order of extreme unction. She improved so rapidly that, the day after the stroke, she was able to execute powers of attorney, authorizing her daughter Marie to sign checks, c. Her physician attended her continuously until June 21st, 1922, when she had recovered sufficiently for him to discontinue his visits. She was also attended by an osteopath for some time.
She suffered a second stroke on February 28th, 1922, from the effects of which her death occurred April 9th.
On the 26th day of March, 1920, Mrs. Smyth executed what purported to be her last will and testatment, in which she devised and bequeathed the whole of her estate to Marie C. Smyth in trust, to pay the net income arising therefrom in equal parts to each of her five children during the term of their natural lives, and, upon the death of either of said children, to pay over one-fifth of the principal of the estate to such person or persons as the child so dying might direct, and appointed Marie C. Smyth as her sole executrix.
This will has never been probated, and is in the possession of Marie C. Smyth. It was executed in Philadelphia, and Rosalie Smyth testifies that, on the train coming down from Philadelphia, the latter part of March, her mother told her she was going to sign these deeds because she wanted no accounting made of her money to anyone. She was going to give them to Marie; she was going to make Marie the head of the family; she wanted her to take her place as such.
It is very clear that Mrs. Smyth had at all times before she suffered the stroke of April 27th, 1920, had considered the matter seriously before she signed the deeds, and that she had refrained from signing them during that period of more than a year, that she had executed the paper called the will, in which she provided for the disposition of all her properties, in the manner therein stated. It is also significant that Rosalie testified that her mother told her shortly after the execution of the will "she was going to make Marie the head of the family; she wanted her to take her place." It is true that Rosalie also testified her mother said "she was *Page 137 
going to sign these deeds, because she wanted no accounting made of her money."
There is nothing in the testimony which would indicate that the mother ever spoke of this conveyance between its date and the time of her second stroke, nor is there anything to indicate that the daughter took any possession of the property or of its income (as her own) during the mother's lifetime.
There admittedly was no advice of any kind to Mrs. Smyth at the time of the execution of this deed, and I am fully convinced that this deed does not represent the voluntary act and deed of Mrs. Smyth.
A decree will be advised in accordance with the prayers of the bill.