ESTHER E. VOORHEES, complainant-appellee,

*v.*

MARTHA L. CHRISTIE and JAMES H. CHRISTIE, defendants-appellants.

[Submitted March 25th, 1924. Decided May 19th, 1924.]

A woman, eighty-eight years of age, transferred to a niece, money and mortgages aggregating $8,000 out of an estate of $11,000. The niece claimed that the transfer was made in consideration of past services, and an agreement upon the part of herself and husband to board and care for her aunt during the remainder of her life. After remaining for over three years in the home of her niece, a bill was filed in the court of chancery by the aunt for an accounting upon the claim that the transfer was to secure the payment of $40 per month for board and care—*Held*, upon a review of the evidence which showed that the aunt at the time of the transaction was well in body, alert in mind, and was advised by a reputable member of the bar as to the nature and consequences of her act, that the transaction was a lawful contract, and the executors of the aunt's estate were not entitled to an accounting.

22

On appeal from a decree of the court of chancery.

*Messrs. Morrison, Lloyd & Morrison (Mr. William J. Morrison, Jr.,* of counsel), for the defendants-appellants.

*Mr. Henry Smith (Mr. Addison P. Rosenkrans,* of counsel), for the complainant-appellee.

The opinion of the court was delivered by

KATZENBACH, J.

This is an appeal from a final decree of the court of chancery, which adjudged that money and the proceeds of certain mortgages assigned by the complainant to one of the defendants, Martha L. Christie, constituted a trust fund, to which the complainant was entitled, and for which the defendants should account.

The complainant, Esther E. Voorhees, was in the year 1918 a widow, eighty-eight years of age, childless, and living alone. She was ill. She was not possessed of sufficient strength to do her household work. She required a servant and a nurse. She had the means but was apparently too penurious to provide for her own comfort. The defendant Martha L. Christie was a niece of Mrs. Voorhees. Prior to he marriage to James H. Christie she had lived with her aunt and her aunt's husband. For twenty years she had been their housekeeper. She was a good cook and a tactful nurse. After her marriage to Mr. Christie, Mrs. Voorhees had called upon her niece in emergencies. Mrs. Christie had responded and had nursed her aunt through illnesses. In 1918 Mrs. Voorhees owned a house worth $2,500 and mortgages and money aggregating $8,500. In the spring of 1918 she became ill. Mr. and Mrs. Christie, who lived about two blocks from Mrs. Voorhees, carried to Mrs. Voorhees her meals. Mrs. Christie attended to the household work and ministered to her aunt. When she grew better Mrs. Voorhees executed a will which left the residue of her estate, after making bequests of $1,100, to Mrs. Christie. This will was

made in May, 1918. In July of the same year Mrs. Voor-
hees went to the home of the Christies and soon thereafter was
completely restored to health. In 1906 Mr. and Mrs. Voor-
hees had instituted a law suit against the Christies to recover
the value of a house and lot which they had conveyed to Mrs.
Christie. Mrs. Christie had thought it was a gift. The suit
proceeded to final judgment. The outcome of the suit was
unfavorable to the Christies. A judgment was entered against
them which they paid. This was undoubtedly a considerable
factor in the Christies determining to have the matter of
compensation for the board and care of Mrs. Voorhees defi-
nitely settled, when in the summer of 1918 Mrs. Voorhees
had recovered her health and had become an inmate of the
Christie home. There was also a feeling upon the part of
the Christies that the will might be altered by Mrs. Voorhees,
or her property given to others during her life. In other
words, the Christies did not trust Mrs. Voorhees. This feel-
ing resulted in Mr. Christie telling Mrs. Voorhees that she
would either have to arrange to provide the compensation
promised his wife or find some other place to live. The re-
sult of this conversation was the transfer in September, 1918,
by Mrs. Voorhees, of mortgages and cash, amounting to
$8,000, to Mrs. Christie. The house and $500 were retained
by Mrs. Voorhees. The Christies' understanding and later
version of the transaction was that the money and securities
transferred to them was compensation for past services and
for the care and board of Mrs. Voorhees during the remainder
of her life. The agreement was not in writing. It was not
necessary that it should be to make it legal. After this trans-
action, Mrs. Voorhees lived with the Christies until Jan-
uary 31st, 1922, when she left. In November, 1921, Mrs.
Voorhees sustained a bad fall. This, apparently, affected her
mind. She became somewhat childish. In the early part of
1922 she filed the bill of complaint in this case, alleging that
the transfer was for the purpose of securing to Mrs. Christie
$40 per month for her board. Her testimony was taken.
She died, however, before the decision was rendered. The
suit was revived by her executors. The conclusions of the

learned vice-chancellor treated the case as one of a voluntary gift made by a woman of advanced years who was at the time ill and under the domination of the donees which stripped her of the bulk of her estate without having at the time the benefit of any efficient independent advice as to the nature and extent of the transfer. The appellants contend that the transaction was a contract by which Mrs. Voorhees secured for the remainder of her life a good home and kind care; that she had independent legal advice at the time of the transfer; that she was at the time of the transfer and agreement in good health, sound mind, and fully comprehended what she was doing and the benefits she was obtaining, and that she was not under their control and domination.

This is a fact case. In such cases much weight is given in this court to the conclusions of the vice-chancellor who has heard the case, as he is in a better position to judge of the credibility of the witnesses by hearing from their lips the testimony which is given and watching their demeanor on the witness-stand. In the present case, however, we feel constrained to differ in the result reached by the vice-chancellor. We think the preponderance of the evidence supports the theory of the Christies that the transfer of the cash and mortgages was the consideration of a contract to support and care for Mrs. Voorhees during the remainder of her life, and in part to compensate Mrs. Christie for the care she had already bestowed upon Mrs. Voorhees in nursing her to health. This view is based upon the fact that Mrs. Voorhees, although advanced in years, was at the time mentally keen and alert, was completely restored to health, was desirous of being under the care of Mrs. Christie and of enjoying the comforts of the Christie home, and was willing, if not eager, to enter into a contract, to secure these advantages. Before making the transfer she was advised by Mr. Mabie, a lawyer of standing in the community, who testified that Mrs. Voorhees not only was advised of the nature and consequences of her act, but fully comprehended it. This is further evidenced by the making of another will after the transfer in which she made no mention of the $8,000, but disposed of the property re-

tained by her and made a son of the Christies an executor of the will. The board and care received by Mrs. Voorhees in the Christie home were worth much more than $40 a month. For over three years the benefits of the contract were accepted by Mrs. Voorhees without a protest. It was only when her mind became impaired by the injury, or senility, or both, that she expressed any dissatisfaction with the arrangement she had made. Having received the advantages of the contract it seems to us that it is inequitable to oblige the other party to the contract to surrender the consideration. While courts should be zealous in scrutinizing transactions of this nature and of preventing those in a dominant position from obtaining or accepting gifts from the ill and aged who are stripping themselves of the whole or greater part of their estate, as stated in the leading cases of *Slack* v. *Rees, 66 N. J. Eq. 447,* and *Post* v. *Hagen, 71 N. J. Eq. 234,* yet, within limits, an aged person should be permitted to contract for her support and care during the remainder of her life and the party with whom the contract is made, where the evidence shows that the transaction is understood and there has been no fraud or over-reaching practiced should be protected in the retention of the consideration which has induced the contract. Often an aged person can secure more comfort and care by such a contract than if the money were retained and expended from time to time.

The decree of the court of chancery is reversed, with costs, with directions that a decree dismissing the complainant's bill be entered.

*For affirmance*—MINTURN—1.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS—13.