The bill in this case is filed to set aside the conveyance of a farm located in Sussex county, New Jersey, which was transferred by Horace D. Hoffman in his lifetime to the defendant Margaret N. Roeder. The deed for the property was executed on June 13th, 1923, and afterwards was recorded in the Sussex county clerk's office. On June 18th, 1923, Hoffman died. The property was valued at about $3,000. The consideration for the conveyance set forth in the deed was —
"One dollar and other valuable consideration, including the care through sickness and health during life of said Horace D. Hoffman further set forth herein, lawful money of the United States."
The deed contains a further recital forming the description of the property conveyed, as follows:
"It is a part of the consideration for which the said Horace D. Hoffman has granted this deed that the said Margaret M. Roeder, the party of the second part, or her heirs or assigns, shall board, take kind and proper care of the said Horace D. Hoffman, in sickness and health so long as he shall live, and that she will furnish all medical attendance and nursing which the said Horace D. Hoffman shall need in any sickness which may overtake him during his lifetime, and upon his death shall provide for him a good and respectable funeral and burial in the cemetery at Mount Salem, in the township of Wantage, this consideration is made a lien upon the said farm, and, in case of failure, to furnish any part of this consideration, the cost of such failure shall be paid from a sale of the said farm by proper legal procedure."
The facts material to the issue are not complicated and are practically undisputed. The inferences to be drawn from them, however, are in sharp dispute between the contending parties. It appears that for about a year prior to his death Hoffman had been in failing health. He was nearly eighty years old at the time of his death. In the preceding year he had suffered a stroke of paralysis, and all the testimony goes to *Page 28 
show that this resulted in a deterioration of both his physical and mental energies. Other complications resulted, and his kidneys became affected, and the usual and expectable conditions therefrom ensued. Hoffman's wife had died, and he apparently had no immediate family to whom he could look for care and attention in his old age. He had leased his farm where he had lived to the complainant, Arthur R. Clark, who, with his wife, then lived on the farm. In October, 1922, Hoffman made a will in which he devised the farm to the complainant. This was shortly before Hoffman sustained the paralytic stroke. He seems to have been fond of the complainant and desired him to have the farm after his death, at the time this will was made. Hoffman appears to have been then living on the farm, although he, from time to time, went to live with other people, including the defendants. Early in the year 1923 Hoffman's condition became so feeble that he desired to arrange with someone to take care of him during the rest of his life. He had an aversion to being sent to a hospital. He thereupon asked Clark, his tenant, and the devisee named in his will, if he would take care of him while he lived, but Clark said that he did not have time to do so, and Clark's wife said that she would not. Hoffman then asked a Mr. Muir if he would take care of him, but Muir told him that while he would be willing to take care of him until such time as Hoffman might require daily attention, that then he would have to go to the hospital. This was just what Hoffman desired to avoid, so he made no arrangement with Muir. He thereupon interviewed Mr. and Mrs. Roeder, the defendants, and submitted to them the proposition that if they would board him and take care of him for the rest of his life, and see to it that he was buried in the cemetery of his choice, he would convey to them, in his lifetime, the farm in question. It appears that they considered this proposition for some time before they accepted it, but, on May 2d 1923, they finally agreed to its terms. It appears, further, that there was an agreement in writing to this effect prepared, and that it was signed by Mr. Hoffman, but was not signed by the Roeders. At that time, also, the Roeders advanced *Page 29 
to Mr. Hoffman $50 with which to pay taxes that had accrued on the property. This contract was not produced, however, and the solicitors for the defendants claim that it has been lost, but, in view of the subsequent conveyance of the farm by Hoffman to Mrs. Roeder, the agreement does not seem to me to be material. The transaction was completed by the execution of the deed so far as Hoffman was concerned, and, so far as the Roeders are concerned, the deed itself sets forth the duties which was incumbent upon the grantee to perform as the consideration for the conveyance.
The complainant, who claims the farm by reason of the devise in Hoffman's will, now seeks to have this conveyance to Mrs. Roeder set aside, so that title to the farm may thereby vest in him. He attacks the validity of the conveyance on the grounds that the grantor lacked mental capacity to make a valid deed; that he was unduly influenced by the Roeders to convey the property to them; that the conveyance was without consideration, or for a grossly inadequate one, and that because of the inadequate consideration the conveyance was fraudulent.
The defendants, on the other hand, contend that the conveyance to Mrs. Roeder was based upon a valuable and adequate consideration; that the grantor had full mental capacity to understand the nature and purpose and effect of his acts, and that there was no undue influence or fraud practiced by them upon the grantor.
It is apparent that the complainant in this case does not stand in the position of a creditor, or a near relative, or a contractee, against whom the conveyance to Mrs. Roeder, even if based upon an inadequate consideration, could be considered to be fraudulent or in disregard of their legal rights. He is simply one who contends that he is the donee of the owner's bounty under a will to that extent made in his favor, almost a year prior to the death of the testator, the subject-matter of which devise was voluntarily conveyed by the owner, after the execution of that will, to a grantee, who, thereby, in accepting the deed, became bound to perform the covenants therein contained. Under such circumstances, I *Page 30 
feel that the complainant should produce very strong and convincing testimony to establish his objections to the conveyance if he is to prevail. I do not think that he has done this.
Mr. Hoffman had the right to do as he wished with his property, and to bestow it where he desired. He was under no legal obligation to convey it to complainant, and, after he found that complainant and his wife would not undertake to care for him as he desired, he had a perfect right to bargain with the defendants for that care and to convey his farm to them in consideration thereof. At the time he made his bargain with the defendants no one knew how long Hoffman would live nor how much care and attention, medical and otherwise, he might require. Defendants undertook to care for Hoffman under those circumstances, upon his agreeing to convey the farm to them, and after they had taken care of him for some time, and it became apparent that his condition was growing steadily worse, they arranged for the execution of the deed. On the day of the execution of the deed defendants drove Hoffman to Sussex to the office of a Mr. Stickney, who was the person who had drawn the will for Hoffman in the preceding October, and who appears to have been a scrivener, and Hoffman's adviser. The testimony of the various witnesses shows that on this occasion Mr. Hoffman went to the bank, where he had his safe deposit box, and inquired for the proper officers in order to obtain access to this box. He selected from it certain papers that he said he required, and returned the box to its place. Thereupon he went to Stickney's office, and the deed involved in this suit was drawn. Although Mr. and Mrs. Roeder were present with him, nevertheless, Stickney inquired very carefully and thoroughly into the transaction, and frankly interrogated Hoffman as to his relations with the defendants, and the nature and purpose of the action that he was taking, in order to satisfy himself that it was as it should be. The official of the bank, from whom Hoffman secured the papers earlier in the day, testifies that later on Hoffman returned and obtained the revenue stamps necessary to be placed on *Page 31 
the deed. He further testified that Hoffman appeared to know definitely just what he wanted and what he wanted to do, and that he appeared to be competent to do it. Other witnesses testified in support of the mental capacity of the grantor, and, although the physicians who attended Hoffman during his illness testified that the nature of his maladies naturally affected both his physical and mental faculties, still neither of them would say that he did not have sufficient capacity to understand the nature and effect of his acts at the time of the making of the agreement with the defendant and the execution of the deed.
There is ample authority to sustain a conveyance of lands made by a grantor in consideration of maintenance and care during his natural life when made by one having sufficient mental capacity, in the absence of fraud, duress or undue influence. Collins v.Collins, 45 N.J. Eq. 813; Holland v. John, 60 N.J. Eq. 435;Soper v. Cisco, 85 N.J. Eq. 165; Voorhees v. Christie,96 N.J. Eq. 337.
In the present case, I feel that the grantor had sufficient capacity to make the deed, which was based upon a fair, valuable consideration under the circumstances existing at the time of the transaction leading up to its execution, and that neither fraud, duress nor undue influence has been established to subvert it.
For these reasons I am constrained to deny the prayer of the bill, and will advise a decree that it be dismissed accordingly. *Page 32